■ Antoinette Yannon, Individually and as Executrix of Samuel A. Yannon, Deceased, Respondent, v RCA Corpora-

TION, Formerly Known as RADIO CORPORATION OF AMERICA, Appellant.—In an action to recover damages for personal injuries and wrongful death, the defendant appeals, as limited by its brief, from so much of an order of the Supreme Court, Richmond County (Sangiorgio, J.), entered March 14, 1986, as, upon renewal and after a hearing, adhered to its original determination denying the defendant's motion for summary judgment.

Ordered that the order is modified, on the law and the facts, by adding a provision that, upon searching the record, the defendant's affirmative defense that the action is barred by the applicable Statute of Limitations is dismissed; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiff.

On or about May 17, 1976, the plaintiff commenced the instant action sounding in products liability. Her complaint alleged that at various times prior to her husband Samuel Yannon's death in 1974, he was exposed to excessive radiation emissions while working with equipment manufactured by the defendant, which emissions eventually caused his death. The defendant moved for summary judgment, claiming that since Mr. Yannon's last possible exposure to radiation occurred in December 1968 his cause of action accrued on that date and expired three years later under the applicable Statute of Limitations. It was alleged that since he no longer possessed a viable cause of action at the time of his death in 1974 the plaintiff could not maintain her action. The plaintiff responded that because Mr. Yannon was already "insane" in December 1968, the Statute of Limitations was tolled pursuant to CPLR 208, and her action was thus timely brought. Special Term first denied the defendant's motion. Upon the defendant's motion for renewal, Justice Rubin, by order dated May 18, 1982, directed a hearing on the issue of whether Mr. Yannon was insane in December 1968. After a hearing, without a jury, Justice Goldberg, by order dated July 7, 1982, granted the motion for summary judgment. In a memorandum decision, Justice Goldberg set forth the conflicting evidence, assessed its credibility, and concluded that Mr. Yannon was not insane in December of 1968 for CPLR 208 tolling purposes. Thereafter, this court reversed Justice Goldberg's order on the ground that certain documents had been wrongfully excluded from evidence at the hearing, and remitted the matter to Special Term for a new hearing on the same issue of Mr. Yannon's insanity in December of 1968 (Yannon v RCA Corp., 100 AD2d 966). After a second hearing without a jury,

Justice Sangiorgio, in the order appealed from, denied the motion for summary judgment, finding that issues of fact existed as to Mr. Yannon's insanity in 1968, which issues must be submitted to a jury for consideration.

Both parties argue, and we agree, that Justice Sangiorgio should have determined the issue himself rather than referring it to a jury. In ordering the first hearing, Justice Rubin was, in fact, acting pursuant to CPLR 3212 (c), which permits an immediate trial of issues of fact raised by a motion for summary judgment based on the Statute of Limitations. Accordingly, after the first hearing, Justice Goldberg, recognizing the purpose of the hearing, assessed the conflicting evidence, made findings of fact, and determined the issue. Finally, when this court reversed Justice Goldberg's order, we expressly remitted for "a new hearing not inconsistent herewith" and identified the "key issue *to be resolved*" (emphasis added) as "whether decedent was unable to protect his legal rights in December of 1968". Upon these facts, it is clear that Justice Sangiorgio should have determined the factual issue. We now believe it appropriate for this court to determine the issue in question, as it is within our power to make factual determinations.

A person is "insane" pursuant to CPLR 208 for the purposes of tolling the Statute of Limitations if he is unable to manage his business affairs and estate and to comprehend and protect his own legal rights and liabilities because of an over-all inability to function in society *(McCarthy v Volkswagen of Am.,* 55 NY2d 543, 547-548). Both parties agree that if Mr. Yannon's cause of action accrued in December 1968 and he was already insane for CPLR 208 tolling purposes at that time, the instant action was timely brought. If he was not insane at that time, the instant action would be barred by the applicable Statute of Limitations *(see,* CPLR 208, 214). Upon our review of the record, we now determine that Mr. Yannon was insane for CPLR 208 tolling purposes in December 1968 and that the instant action is therefore not barred by the Statute of Limitations. Accordingly, the defendant's motion for summary judgment should be denied, and, upon searching the record, its affirmative defense that the action is barred by the Statute of Limitations is dismissed.

At the hearing, the plaintiff elicited the opinion of Dr. Martin Geller, a board-certified neurologist who examined Mr. Yannon in March of 1969. Dr. Geller's recorded findings revealed that Yannon was slow in thinking, that his memory was impaired, and his responses slow and delayed, and that he

walked with decreased arm swing. Dr. Geller, who diagnosed Yannon as suffering from bilateral cerebral dysfunction or presenile dementia, further noted that Yannon could not tie a necktie, experienced periodic jerking of the arms, and was unable to add two-digit numbers. When asked at the hearing whether he could state, with a reasonable degree of medical certainty, whether the mental dysfunction he had diagnosed in March of 1969 existed in December 1968, Dr. Geller answered that in his view it did, and further stated that by virtue of the mental affliction diagnosed, Yannon's ability to conduct his business affairs was impaired at that time. In July 1969, upon Dr. Geller's recommendation, Mr. Yannon was hospitalized with a recorded impression on admission of presenile dementia. Upon Mr. Yannon's release from the hospital, the final diagnosis was "right cerebral dysfunction with the presence of bilateral disease". The hospital diagnosis further stated that Mr. Yannon was probably suffering from "a degenerative disease giving rise to a picture of a presenile dementia".

Additionally, the plaintiff called as a witness Dr. Alfredo Santillo, who examined Mr. Yannon in June 1970. Dr. Santillo's examination revealed that Mr. Yannon was unable to recall his name, could not recognize his wife, and could not provide a medical history. Dr. Santillo further gave his opinion that, with a reasonable degree of medical certainty, the mental deficits exhibited by Mr. Yannon existed in December of 1968 and that Mr. Yannon was unable at that time to function and take care of his business affairs.

In contrast, the defendant's medical expert, Dr. Frank Karl Boschenstein, who did not examine Mr. Yannon, testified that in his opinion Mr. Yannon was fully capable of handling his business affairs as of December 1968. Although Dr. Boschenstein concurred in Dr. Geller's diagnosis of presenile dementia, and agreed that the condition could have existed in December 1968, he characterized the effects of the illness at that time as "minimal". Significantly, on cross-examination, when questioned as to the grounds upon which he based his conclusion that the effects of the illness were minimal, Dr. Boschenstein replied that he had premised his conclusion on the testimony of two of Mr. Yannon's co-workers who had appeared on the defendant's behalf at the first hearing. These co-workers testified in substance that they had worked with Mr. Yannon at the Empire State Building and lunched with him frequently during the period in question and that Mr. Yannon appeared normal to them. However, one of the two

co-workers, Charles Hinson, testified that the other witness, Daniel J. Flynn, Mr. Yannon's alleged supervisor in December of 1968, had been transferred from the Empire State Building in 1966 and that another man held the position supposedly held by Flynn. Further, according to Hinson's own personnel records, Hinson himself had never been assigned to the Empire State Building.

Certain additional nonmedical evidence highly relevant to the key issue at bar (see, *Yannon v RCA Corp.,* 100 AD2d 966, *supra)* buttresses our conclusion that Mr. Yannon was unable to manage his business affairs and to comprehend his legal rights and liabilities. In July 1970 one of Mr. Yannon's supervisors filed a confidential report explaining why Mr. Yannon had been transferred in December 1968 from the Empire State Building to another facility. The report, which lends credibility to the plaintiff's contention that Mr. Yannon was not functioning normally in December 1968 states:

"In December of 1968 Mr. Yannon was assigned to the Mobile Radio & TV Maintenance Center because his physical condition had deteriorated to a point that he was unable to work in the field. At this time we thought we could use him on the maintenance of test equipment. Experience revealed he was unable to perform any complicated assignments. His condition has reached a point that he has become completely non-productive.

"At times his hearing and eyesight becomes so poor that he is unable to recognize people and cannot determine the direction he should go to travel to another location. Due to this we have become quite concerned about his ability to travel to and from his assigned work location safely, therefore in our opinion this man's condition is so poor that if he continues in his present assignment he will jeopardize the safety of himself and his fellow employees".

Moreover, in the course of the proceedings, the affidavit of another of Mr. Yannon's supervisors was submitted and subsequently introduced by the plaintiff into evidence at the hearing. In the affidavit, the supervisor states, in pertinent part, concerning Mr. Yannon's posttransfer activities: "Those of us that worked with Sam Yannon at the maintenance center realized that he was having health problems, although I can not state exactly what those problems were. Nevertheless, it was clear to me that Sam could not do any form of complicated technical work and that as time went on the tasks that he could perform were only very simple ones." The supervisor further observed that "Sam's work, along with the work of

others performing these functions, would only be of the simplest nature and would not require any type of technical work". Notably, when Dr. Boschenstein was asked on cross-examination if his opinion as to Mr. Yannon's mental fitness would be altered if it were the case that Mr. Yannon could not perform simple tasks, Dr. Boschenstein conceded that it would.

Finally, the testimony of Mrs. Yannon and Samuel Yannon, Jr., further tended to confirm the findings of the plaintiff's medical experts concerning Mr. Yannon's mental capacity. These witnesses both testified to Mr. Yannon's erratic and confused behavior in and around December 1968.

In light of the foregoing, the weight of the evidence adduced at the hearing established that Samuel Yannon suffered from the disability of insanity in December 1968 and is therefore entitled to the benefits of the toll provided for in CPLR 208. Mangano, J. P., Niehoff, Kooper and Spatt, JJ., concur.