**Eleanor MONAGHAN, Individually and as Guardian Ad Litem for William Monaghan, an incompetent, Plaintiffs,**

v.

**SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Defendant.**

**SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Third–Party Plaintiff,**

v.

**The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and Port Authority Trans–Hudson Corp., Third–Party Defendants.**

**SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Second–Third–Party Plaintiff,**

v.

**TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, McLane Security, Inc., Second–Third Party Defendants.**

No. 89 Civ. 4900 (RWS).

United States District Court,
S.D. New York.

July 22, 1993.

in prison and medically oriented treatment programs. See W. Glasser, *Reality Therapy* (1965).

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, of counsel), for plaintiffs.

Bower & Gardner, New York City (Warren Sanger, of counsel), for defendant SZS 33 Associates, Inc.

Lester Schwab Katz & Dwyer, New York City (Adam Hurwitz, of counsel), for defendant R.B. McLane Associates, Inc.

Gordon & Silber, New York City (Steven Sold, of counsel), for defendant Tishman Const. Corp.

Milton H. Pachter, New York City (Richard D. Williams, of counsel), for third-party defendant The Port Authority of New York and New Jersey and Port Authority Trans–Hudson Corp.

OPINION

SWEET, District Judge.

This opinion addresses two sets of related motions. The first set (the "Set I Motions") consists of the following motions: the motion of defendant and second third-party defendant R.B. McLane Associates, Inc., ("McLane"), brought pursuant to Rule 56, Fed.R.Civ.P., for an order granting it summary judgment against the Plaintiff Eleanor Monaghan, individually and as a guardian *ad litem* for her husband William Monaghan ("Monaghan," collectively, the "Plaintiffs"); and the motion of defendant and second third-party defendant Tishman Construction Corp. of New York, Inc., (Tishman), brought pursuant to Rule 56, for an order granting it summary judgment against the Plaintiffs.

The second set of motions (the "Set II Motions") includes the following: the motion of defendant and third-party plaintiff Silverstein 33 Associates, L.P. ("SZS"), brought pursuant to Rule 56, for an order granting summary judgment in its favor against the Plaintiffs, and in the alternative, SZS's motion, brought pursuant to Rule 42, Fed.R.Civ.P., for bifurcated trials on the issues of liability and damages and for an order excluding Monaghan from the courtroom during the trial; McLane's motion, brought pursuant to Rule 42, for bifurcated trials and for an order excluding Monaghan from the courtroom; and the cross-motion of third-party defendants The Port Authority of New York and New Jersey (the "Port Authority") and the Port Authority Trans–Hudson Corp. ("PATH"), brought pursuant to Rule 56, for order granting them summary judgment against SZS's third-party complaint.

Oral argument was heard on the Set I Motions on March 10, 1993, and this set of motions was considered submitted as of that date.

Oral argument on the Set II Motions was originally scheduled for May 12, 1993. During the course of the argument the Plaintiffs indicated that a deposition of a relevant witness was scheduled for the following week. After the Court noted that the Plaintiffs counsel should be "hanged, drawn, and quartered" Tr. at 14, for wasting everyone's time as a result of its failure to notify the Court and the parties of this development and request an adjournment of the oral argument until the deposition was taken, oral argument was adjourned to June 23, 1993. Oral argument on the Set II motions was heard on June 23, 1993, and those motions were considered submitted as of that date.

For the reasons set forth below, SZS's Rule 56 motion and the Rule 56 cross-motion of PATH and the Port Authority are denied. The Rule 56 motions of McLane and Tishman are granted. The Rule 42 motions of SZS and McLane are denied, and their motions to exclude Monaghan from the courtroom are granted.

***The Parties***

The Monaghans are natural persons who reside and are domiciled in the State of New Jersey.

SZS, a Delaware limited partnership, owns property in the State of New York, specifically, the property located at 1275 Broadway in New York City, formerly known as the Gimbels' Building (the "Premises").

McLane and Tishman are corporations duly organized and existing under the laws of the State of New York.

The Port Authority and PATH are governmental entities duly organized and existing under and by virtue of the laws of the States of New York and New Jersey and operate a public railroad transportation system.

### The Facts and Prior Proceedings

The facts and. prior proceedings in this diversity action are fully set forth in the prior opinions of this Court, familiarity with which is assumed. *See Monaghan v. SZS 33 Associates, L.P.,* 148 F.R.D. 500 (S.D.N.Y. 1993) (*"Monaghan V"*); *Monaghan v. SZS 33 Associates, L.P.,* No. 89 Civ. 4900 (RWS), 1992 WL 135821, 1992 U.S.Dist. LEXIS 7864 (S.D.N.Y. June 1, 1992) (*"Monaghan IV"*); *Monaghan v. SZS 33 Associates, L.P.,* No. 89 Civ. 4900 (RWS), 1991 WL 156377, 1991 U.S.Dist. LEXIS 10943 (S.D.N.Y. Aug. 8, 1991) (*"Monaghan III"*); *Monaghan v. SZS 33 Associates, L.P.,* 760 F.Supp. 355 (S.D.N.Y.) (*"Monaghan I"*), *aff'd,* 953 F.2d 635 (2d Cir.1991) (unpublished summ. order) (Nos. 91–7781, 91–7803, slip. op. (2d Cir. Dec. 5, 1991), referred to as *"Monaghan II"*). Only those facts relevant to the instant motions and cross-motion are presented below.

On March 23, 1987, Monaghan was shot in the head and severely brain damaged, during an attempted robbery. The attack took place as he passed through a vestibule or lobby area (the "Vestibule") and descended a stairway ("Stairway 307," originally Stairway No. 1) located on the Premises. He was on his way to the train station operated by PATH and the Port Authority located beneath the Premises.

At the time of the attack, the old Gimbels' Building on the Premises was closed, and SZS had contracted with Tishman to undertake an extensive renovation and construction project on the Premises.

On July 14, 1989, the Plaintiffs brought a diversity action against SZS on a theory of premises liability for negligently and knowingly permitting a dangerous condition to exist upon its premises (the *"SZS Action"*). On December 28, 1990, the Plaintiffs brought a diversity action against McLane and Tishman on a theory of liability for negligently, recklessly, and carelessly securing the Premises and thereby proximately causing Monaghan's injury (the *"McLane Action"*).

After two rounds of discovery, SZS moved for summary judgment. In *Monaghan I,* based upon SZS's representations, this Court granted that motion on alternative grounds: first, SZS did not owe Monaghan a duty of care because it was the dominant estate owner only with regard to the Vestibule, not Stairway 307 on which Monaghan was attacked[1]; second, even if the attack took place in the Vestibule, the danger of criminal assault there was not foreseeable; and third, even if the attack took place on Stairway 307, SZS owed Monaghan no greater duty of care than if the attack occurred in the Vestibule.

In its summary order affirming *Monaghan I,* the Second Circuit held that, because the Plaintiffs could identify only two reported crimes that had occurred in the vestibule areas prior to the attack on Monaghan, the Plaintiffs had failed to advance sufficient evidence to create an issue regarding the duty of care SZS allegedly owed Monaghan. *See Monaghan II,* slip op. at 3.

As set forth in detail in *Monaghan IV* and *Monaghan V,* the Plaintiffs' subsequent motion to vacate the summary judgment and reinstate this action was granted after this Court found that SZS had deliberately failed to produce various relevant documents. In *Monaghan V,* this Court also granted the Plaintiffs relief pursuant to Rule 37, Fed. R.Civ.P., in the form of "precluding SZS from raising as a defense the issue that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon." 148 F.R.D. 500, 511.

Following the reinstatement of this action, SZS was granted permission to implead PATH and the Port Authority as third-party defendants. SZS filed the third-party complaint naming them as third-party defen-

---

1. PATH was held to be the dominant owner of an easement on the Premises that included the stair- way.

dants on July 14, 1992. SZS also was granted permission to implead McLane and Tishman was second third-party defendants, and SZS filed that second third-party complaint on September 21, 1992.

The *SZS Action* and the *McLane Action* were consolidated under the single caption set forth above by order of the Court on July 8, 1992.

The Defendants, third-party Defendants, and second third-party Defendants now bring their respective motions for orders granting each summary judgment against either the Plaintiffs or SZS as the third-party plaintiff. Additionally, SZS and McLane move for separate trials on the issues of liability and damages and move to exclude Monaghan from the courtroom during the trial.

### Discussion

### I. The Motions For Summary Judgment

#### A. *Rule 56 Standards for Summary Judgment*

The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991).

The Second Circuit has unambiguously defined the role of the district court in deciding Rule 56 motions:

The district court's role ... requires the court not to resolve disputed issues of fact itself, but rather to see if there are issues of fact to be resolved by the factfinder at trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). That is to say, when examining the record before it to see if there are any genuine issues of

material fact, the court's focus is on issue-finding, not on issue-resolution. In making its assessment, the trial court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See United States v. Diebold,* 369 U.S. 654, 655 [82 S.Ct. 993, 993, 8 L.Ed.2d 176] (1962) (per curiam).

*Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

When a motion for summary judgment is made and the nonmoving party will bear the burden of proof at trial, "Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991). However, if the moving party is still entitled to judgment as a matter of law after all the facts alleged by the nonmoving party are resolved in his favor as true, then any remaining factual disputes are neither "genuine" nor "material" and will not prevent the court from granting the motion. *See Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("a material fact is 'genuine' ... if the evidence is such that a reasonably jury could return a verdict for the non-moving party"). Thus, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Finally, the court must look to the substantive law to determine which facts are "material," to wit, disputed facts that might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. It follows, then, that "[e]ntry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

### B. *SZS's Motion For Summary Judgment Is Denied*

As is detailed in *Monaghan I*, 760 F.Supp. at 357, on March 23, 1987, at 7:30 p.m., Monaghan entered the Vestibule through certain doors located near the corner of Sixth Avenue and 32nd Street of the Premises. In order to reach the PATH station from this entrance, a person had to walk into the Vestibule and then proceed down a Stairway 307 to the PATH concourse. Stairway 307 consists of 21 steps leading to a landing (the "Landing"). A second set of stairs ("Stairway 308"), leads from the Landing to the PATH concourse level.

According to SZS, on March 23, 1987, after entering the Premises through the doors and proceeding through the Vestibule to Stairway 307, three armed assailants attacked Monaghan, and, in attempting to rob him, shot him in the head. Monaghan fell at approximately the eleventh step of Stairway 307.

SZS asserts that it is entitled to summary judgment in its favor on the theory that it owed no duty to Monaghan because the injuries suffered by Monaghan were not foreseeable and because Stairway 307 was under the exclusive control of the Port Authority as the dominant owner of certain easements created by agreements and deeds among the City of New York, the Hudson Manhattan Railroad, and Gimbel Brothers, Inc., in 1935 and 1940. The Port Authority acquired these easements in or about 1962 through a condemnation action.

SZS offers a detailed analysis of the law regarding the rights and obligations of the owners of dominant and servient estates in an easement and of the easements affecting Stairway 307. From this analysis, SZS concludes that the Port Authority had the continuous obligation to maintain and secure the easement areas, including Stairway 307 by virtue of the easements and the Port Authority's actions:

> In fact, during all relevant times, and from December 22, 1986 to March 23, 1987, it was the Port Authority that maintained the lighting in the stairway. They patrolled, secured and policed the stairway.

SZS Br. in Supp.Summ.J. at 6. Thus, in SZS's view, from the time of the creation of the easements in 1935, through the supplement agreement of 1940, and on to March 23, 1987, first the Hudson Manhattan Railroad and then the Port Authority was obligated to provide security for patrons of Gimbels and the Railroad on Stairway 307 and in the Vestibule.

#### 1. SZS's Duty To Protect Against Foreseeable Criminal Assault On The Premises

■ In light of the equitable relief granted to the Plaintiffs in *Monaghan V* on the Plaintiffs' Rule 37 motion, SZS is precluded from asserting that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon. *See* 148 F.R.D. 500, 511. Therefore, when all doubts are resolved in the Plaintiffs' favor, *see Consarc*, 996 F.2d 568, 572, it must be concluded that SZS owed Monaghan a duty of care to secure the Premises from precisely the kind of dangerous condition that facilitated the assault on him and caused his injuries.

Thus, while SZS cites numerous authorities supporting the proposition that a landlord does not owe a duty to a person who incurs an unforeseeable injury on the landlord's property, in light of the holding in

*Monaghan V,* these authorities are inapposite. Contrary to the factual findings in *Adiutori v. Rabovsky Academy of Dance, Inc.,* 149 A.D.2d 637, 638, 540 N.Y.S.2d 457, 458 (2d Dep't 1989), the Plaintiffs here have submitted evidence which raises an issue of fact with respect to SZS's notice of prior criminal activity of on the premises, and this notice supports the allegation that SZS had a duty to "provide protective measures." *Id.* at 638, 540 N.Y.S.2d 457.

*Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980), *Miller v. State,* 62 N.Y.2d 506, 478 N.Y.S.2d 829, 467 N.E.2d 493 (1984), *Loeser v. Nathan Hale Gardens, Inc.,* 73 A.D.2d 187, 425 N.Y.S.2d 104 (1st Dep't 1980), and *Sherman v. Concourse Realty Corp.,* 47 A.D.2d 134, 365 N.Y.S.2d 239 (2d Dep't 1975), are relevant to the Plaintiffs' allegations regarding SZS's duty in the matter at hand.

In *Nallan,* the plaintiff was shot by an unknown assailant in the lobby of the defendant's office building. The Court of Appeals held that the defendant had made a prima facie claim in negligence against the defendant landlord who owned and operated the building and had notice of criminal conduct in the area. In quoting the Restatement (Second) of Torts § 344, the Court of Appeals held that a landowner must not only keep his premises safe for the public but take reasonable steps to discover dangerous conditions on them:

> A possessor of land who holds it open to the public ... is subject to liability to members of the public while they are upon the land ... for physical harm caused by the ... intentionally harmful acts of third persons ... and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done, or (b) give a warning adequate to enable the visitors to avoid the harm or otherwise protect them against it....

If the jury found that defendants knew or had reason to know of the prior crimes in the building and further found that defendants should have anticipated a risk of harm from criminal activity in the lobby, it properly could have gone on to conclude that defendants failed in their obligation to take reasonable precautionary measures to minimize the risk and make the premises safe for the visiting public.

429 N.Y.S.2d at 613–14, 407 N.E.2d at 458–59 (citation and footnote omitted).

In *Miller, Loeser,* and *Sherman* this principle of landlord liability was applied to situations where a tenant was injured as a result of foreseeable criminal activity by third parties.

In *Miller,* the Court of Appeals held that a landlord was liable for a rape in a dormitory by a criminal intruder. The Court held that the landlord was liable for not taking adequate security measures to insure that its premises were safe from foreseeable assaults:

> Under this standard, a landlord has a duty to maintain minimal security measures, related to a specific building itself, in the face of foreseeable criminal intrusion upon tenants.

478 N.Y.S.2d at 833, 467 N.E.2d at 497 (citations omitted).

In *Loeser,* two tenants brought an action against their landlord for injuries they suffered when they were assaulted in a parking lot in which the landlord neglected to illuminate large fluorescent lights. While remanding the action for a new trial, the Appellate Division, First Department, upheld the trial court's determination that the landlord's negligent maintenance of its property was the proximate cause of the assault on the plaintiffs:

> Nor is there any substance to the contention that the landlord's negligence was not the proximate cause of the injuries because the immediate cause of the injuries was the criminal act of a third person. It has long been the rule that liability attached if the danger from the criminal act was foreseeable.

425 N.Y.S.2d at 108 (citations omitted).

In *Sherman,* a tenant was assaulted in his building where the landlord had removed a cylinder from the lobby entrance door and rendered the security buzzer system inoperative. The plaintiff had introduced evidence that the landlord had knowledge of prior criminal conduct in the building and in the

surrounding area. The Appellate Division, Second Department, held that the trial court erred in holding that the landlord's negligence was not the proximate cause of the plaintiff's injuries:

> The fact that the immediate cause of the tenant's injury was the act of a third party, i.e., a criminal intruder, does not prevent the landlord's negligence from being regarded in contemplation of law as the proximate cause.

365 N.Y.S.2d at 241.

The Plaintiffs allege that SZS failed to take the requisite security measures to maintain the Premises in a safe condition from foreseeable criminal intrusion, and the relevant case law supports the conclusion that there is a presumption that SZS owed Monaghan a duty of care. Furthermore, while the question of whether one party owes another a duty is a question of law, the answer is inevitably tied to factual questions regarding the circumstances and conditions at issue. In this case, those facts include the foreseeability and notice SZS had of prior criminal acts on the Premises—a fact that is assumed in the Plaintiffs' favor pursuant to both Rule 56 and *Monaghan V*, and the extent to which any duty SZS may have had as landlord was superseded by duties assumed by others through contractual agreements.

### 2. Genuine Issues Of Fact Remain In Dispute Regarding Control Over The Vestibule And Stairway 307

■ The critical question, then, is whether SZS's analysis of the relevant easements affecting Stairway 307 meets the standards governing Rule 56 and establishes that SZS owed no duty to Monaghan. Even a cursory reflection on the question reveals that SZS's narrowly focused analysis on the easements is inadequate in the face of numerous genuine issues of fact which remain in dispute.

First, the nature and extent of the easements are questions of fact to be determined by a jury. The Plaintiffs counter SZS's claim regarding the Port Authority's exclusive obligations by contending that SZS had

assumed the responsibility for the security of the area including both the Vestibule and Stairway 307. A review of the easements supports the Plaintiffs' contention that the language is ambiguous and open to differing interpretations, including the interpretation that SZS, not the Port Authority, was responsible for securing Stairway 307.

Second, regardless of how one interprets the easements, the Plaintiffs have offered evidence that SZS assumed responsibility for the security of the area by providing guards who patrolled the Vestibule, Stairway 307, and the Landing. The Plaintiffs allege further that SZS was responsible for maintaining the lights and the lighting conditions in the Vestibule, on Stairway 307, and on the Landing.

Third, the Plaintiffs contend that, even if it assumed that SZS did not have responsibility for Stairway 307, SZS is still liable on a theory of interference with the Port Authority's easements. *See Gordon v. City of Albany*, 278 A.D. 233, 104 N.Y.S.2d 736 (3d Dep't 1951) (abutting property owner held liable for injuries caused by conditions in sidewalk for which city was usually responsible). SZS panelled over the interior Vestibule doors, barricaded all display windows, blocked all entrances to the department store below the Landing level, and panelled over the doors leading into the vestibule from the street. Thus a reasonable jury could find that, although the Port Authority was ultimately responsible for Stairway 307, SZS's actions on property had created or substantially contributed to the dangerous condition that proximately caused the assault on Monaghan.

Fourth and finally, the role of the Vestibule in the attack remains in dispute. While SZS contends that the Vestibule and its condition was causally unrelated to the attack on Monaghan, the Plaintiffs have offered credible evidence that, even if the attack took place on Stairway 307,[2] the Vestibule was causally related. Specifically, the Plaintiffs contend that SZS's failure to lock the Vestibule and secure Stairway 307 directly contributed to creating the dangerous area in which Monaghan was stalked and attacked.

---

**2.** The Plaintiffs deny this claim, asserting instead that the Vestibule was the place of the attack on

Monaghan.

SZS's attempt to liken the Vestibule to the public sidewalk on which Monaghan walked before entering the Vestibule is unpersuasive. Given the boarded-up condition of the Vestibule, which necessarily decreased the visibility of both Monaghan and the public inside and outside of the enclosed space, SZS's failure to patrol and lock the Vestibule did contribute to the dangerousness of the site and could be found by a reasonable jury to have proximately caused Monaghan's injuries.

Moreover, SZS's reliance on *Tarter v. Schildkraut,* 151 A.D.2d 414, 542 N.Y.S.2d 626 (1st Dep't), *app. denied,* 74 N.Y.2d 616, 549 N.Y.S.2d 961, 549 N.E.2d 152 (1989), and *Santiago v. New York City Hous. Auth.,* 101 A.D.2d 735, 475 N.Y.S.2d 50 (1st Dep't), *aff'd,* 63 N.Y.2d 761, 480 N.Y.S.2d 321, 469 N.E.2d 839 (1984), is unavailing because the critical distinguishing feature in the matter at hand is the combination of the restricted visibility created by the condition of the Vestibule in addition to SZS's alleged duty to patrol and lock the Vestibule.

### 3. SZS Has Failed To Satisfy The Criteria Of Rule 56

When the record on SZS's Rule 56 motion is considered from the perspective of a issue-finder, rather than that of an issue-resolver, *see Diebold,* 369 U.S. at 655, 82 S.Ct. at 993; *Consarc,* 996 F.2d at 572, as it has been here, several genuine issues of material fact are readily identifiable, and these issues must be resolved by the factfinder at trial, *see Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510. In the present action, because the Plaintiffs' proofs are such that they raise genuine issues of material fact regarding the alleged duty SZS owed to Monaghan, and when they are viewed in the light most favorable to Plaintiffs, a rational trier could find for the Plaintiffs. Therefore, the entry of summary judgment in favor of SZS is inappropriate, and the motion is denied. *See Binder,* 933 F.2d at 191.

### C. *The Applicable Statute of Limitations*

#### 1. The Legal Standards Of §§ 208 and 214

In diversity actions, Federal Courts must apply the substantive law of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). New York courts apply New York's statutes of limitations to actions brought in New York except if the State's borrowing statute, N.Y.Civ. Prac. L. & R. § 202, is triggered. *See Loengard v. Santa Fe Indus., Inc.,* 573 F.Supp. 1355, 1359 (S.D.N.Y.1983); *Martin v. Julius Dierck Equip. Co.,* 43 N.Y.2d 583, 588, 403 N.Y.S.2d 185, 187, 374 N.E.2d 97, 99 (1978). The New York statute of limitations governing claims to recover damages for personal injury caused by a defendant's negligence requires that an action on such claims be brought within three years of the time the action accrues. *See* N.Y.Civ.Prac. L. & R. § 214(5); *Von Bulow v. Von Bulow,* 634 F.Supp. 1284, 1298 (S.D.N.Y.1986), *aff'd,* 811 F.2d 136 (2d Cir.1987).

In interpreting and applying § 214, courts have emphasized the primary purpose of the limitations period as being that of fairness to the defendant. This purpose was unambiguously articulated by the Court of Appeals in *Flanagan v. Mt. Eden Gen. Hosp.,* 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969):

> There comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim where the evidence has been lost, memories have faded, and witnesses have disappeared.

24 N.Y.2d at 429, 301 N.Y.S.2d at 25, 248 N.E.2d at 873 (citation and quotation marks omitted).

Section 214(5) may be tolled in the event that any of the conditions set forth in § 208, N.Y.Civ.Prac. L. & R., are met by a potential plaintiff. While § 208 effectively tolls the statutory time in which a plaintiff, disabled by reason of infancy, insanity, or death must commence an action, the tolling provision is not without limitation:

> If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise lim-

ited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under the disability dies, the time within which the action must be commenced shall be extended to three (3) years after the disability ceases or the person under the disability dies, whichever event first occurs....

N.Y.Civ.Prac. L. & R. § 208.

It is well-settled that a person is "insane" pursuant to § 208[3] for the purposes of tolling statutes of limitations generally and § 214(5) in particular if he is unable to manage his business affairs and estate, and unable to comprehend and protect his own legal rights and liabilities because of an overall inability to function in society. *See McCarthy v. Volkswagen of Am., Inc.,* 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457, 459–60, 435 N.E.2d 1072, 1074–75 (1982); *accord Yannon v. RCA Corp.,* 131 A.D.2d 843, 845, 517 N.Y.S.2d 205, 206 (2d Dep't 1987); *Anonymous v. Anonymous,* 154 Misc.2d 46, 50–51, 584 N.Y.S.2d 713, 718–19 (Sup.Ct.1992).

"The person claiming the benefit of the § 208 must establish that the mental affliction either existed at the time of the accrual of the cause of action, or that it was caused by the event upon which the lawsuit is predicated." *See Dumas v. Agency for Child Dev.—New York City Head Start,* 569 F.Supp. 831, 832 (S.D.N.Y.1983); *Anonymous,* 154 Misc.2d at 51, 584 N.Y.S.2d at 719.

The underlying rationale of this § 208 is to protect the rights of the disabled party until such time that his business affairs, estate, and legal rights and liabilities can be adequately and competently represented either by himself or another. *See McCarthy,* 55 N.Y.2d at 548, 450 N.Y.S.2d at 460, 435 N.E.2d at 1075.

The statute must not be read as a permissive legislative enactment allowing a plaintiff to rest upon a stale claim. On the contrary:

[T]he sole purpose of a tolling statute based upon a personal disability is to afford such person an additional amount of time to sue; and exceptions to a limiting statute in favor of persons under disability

should be strictly construed and never extended beyond their plain import. *Cohen v. Pearl River Union Free Sch. Dist.,* 70 A.D.2d 94, 99–100, 419 N.Y.S.2d 998, 1001 (2d Dep't 1979) (citations omitted), *rev'd on other grounds,* 51 N.Y.2d 256, 434 N.Y.S.2d 138, 414 N.E.2d 639 (1980).

■ In the case of a person rendered incompetent at the time the cause of action accrues, § 208 tolls the relevant statute of limitations until a legal guardian or committee is appointed to represent the interests of the incompetent. *See Von Bulow,* 634 F.Supp. at 1300 (appointment of committee terminated legal disability and the tolling effect of § 208); *see also Hernandez v. New York City Health and Hosp. Corp.,* 78 N.Y.2d 687, 694, 578 N.Y.S.2d 510, 585 N.E.2d 822 (1991) (in case of mental incapacity as a result of infancy, "the Statute of Limitations is tolled only until appointment of a guardian or the majority of the sole distributee, whichever is earlier").

### 2. Applying § 208

McLane and Tishman contend that the claims of both William Monaghan and Eleanor Monaghan are time-barred under § 214(5) because this action was brought against McLane almost four years after the cause of action arose. William Monaghan was assaulted on March 23, 1987, and the Plaintiffs filed the *McLane Action* on December 28, 1990. At the time of the assault of the accrual of the *McLane Action,* Monaghan was rendered "insane" for the purposes of § 208. *See Dumas,* 569 F.Supp. at 832.

#### a. *William Monaghan's Claims Against McLane And Tishman Are Time–Barred*

■ McLane and Tishman contend that William Monaghan's claims against them are time-barred because, although he continues to be disabled, his disability ceased in principle and the statute of limitations began to run as early as October 23, 1987, when a formal notice of an intent to bring an action against the Port Authority was filed by Eleanor Monaghan, and no later than January 5,

---

**3.** The statute itself provides no definition of the term "insanity."

1988, when the threatened action was actually commenced. McLane and Tishman argue that as of those dates, William Monaghan's rights and interests were receiving as much protection and consideration as if he had not been suffering from any disability. Thus, in the Defendant's view, the Plaintiffs' failure to commence this action against McLane and Tishman within three years of January 5, 1988, renders the action time-barred and warrants the entry of summary judgment in its favor.

According to the principles set forth in *Von Bulow*, the key date for § 208 purposes is not the date any previous actions were brought by the Plaintiff, but rather the date upon which Monaghan was declared to be legally incompetent and the Plaintiff was appointed as guardian *ad litem* to protect his rights and interests. Thus the critical date for the present issue is May 1987. It was in or about that month that William Monaghan, III commenced an action is the Surrogate's Court, Passaic County, New Jersey, seeking an order declaring his father, William Monaghan, an incompetent and appointing the Plaintiff as guardian *ad litem*.

While the record does not indicate the precise date of the appointment of the Plaintiff as guardian *ad litem* for Monaghan, at the time the *McLane Action* was filed, the Plaintiff was functioning in that capacity. Thus, by October 23, 1987 at the latest, § 208 ceased to toll § 214(5) for the Plaintiffs' claims accruing from the assault of March 23, 1987 on Monaghan. All actions arising from the personal injuries suffered by Monaghan as a result of that attack had to be filed by October 23, 1990 to be timely pursuant to § 214(5). Therefore, the *McLane Action* was untimely filed, and McLane and Tishman are entitled to the entry of summary judgment against Monaghan on all claims raised on his behalf seeking damages from McLane and Tishman in the *McLane Action*.

### b. Mrs. Monaghan's Derivative Claims Against McLane and Tishman Are Time–Barred

It is a well-settled principle of New York tort law that an action brought on behalf of a spouse of an injured party seeking damages for loss of services, comfort, and consortium is derivative in nature and must be brought within three years of the date when the injured party's claim accrues. *See Maxson v. Delaware L. & W. R. Co.*, 112 N.Y. 559, 564, 20 N.E. 544, 546 (1889). Furthermore, a derivative claim for loss of consortium brought by a person who is not under a disability may not benefit from the tolling provision available to a disabled person pursuant to § 208. *See Lewis v. Wascomat, Inc.*, 125 A.D.2d 194, 195, 508 N.Y.S.2d 457, 458 (1st Dep't 1986); *Wenthen v. Metropolitan Transp. Auth.*, 95 A.D.2d 852, 852, 464 N.Y.S.2d 212, 213 (2d Dep't 1983).

McLane and Tishman contend that regardless of the determination of the issue regarding the timeliness of William Monaghan's claim, which accrued at the time of the assault against him on March 23, 1987, the claim brought by Eleanor Monaghan on December 28, 1990 for loss of consortium is time-barred.

The Plaintiffs acknowledge that this claim is time-barred and respond only that SZS ultimately must be held responsible for the loss of this claim because of its actions in concealing information regarding McLane's duty to protect Monaghan. In light of this acknowledgement and the well-settled law of the State of New York regarding the inapplicability of § 208 and other tolling statutes to derivative claims, the motions of McLane and Tishman for summary judgment as to Eleanor Monaghan's derivative claim for loss of consortium are granted.

### 3. The Plaintiffs' Claims Which Overlap With Those Set Forth In SZS's Second Third–Party Complaint Against McLane And Tishman Survive

SZS's second third-party complaint names McLane and Tishman as second third-party Defendants. In light of the Rule 56 motions of McLane and Tishman against the Plaintiffs, SZS contends that those claims set forth in the Plaintiffs' complaint which overlap with the claims in the third-party complaint survive the disposition of those motions in favor of McLane and Tishman.

It is well-settled that the statute of limitations in a third-party action does not

begin to run until after the entry of judgment in the main action. *See Multari v. Glalin Arms Corp.,* 28 A.D.2d 122, 124, 282 N.Y.S.2d 782, 784 (2d Dep't 1967); *Musco v. Conte,* 22 A.D.2d 121, 125–26, 254 N.Y.S.2d 589, 595 (2d Dep't 1964).

No judgment was entered in the Plaintiffs' favor prior to the commencement of the second third-party complaint. Therefore, although the Plaintiffs' direct claims against McLane and Tishman are time-barred, the claims alleged in SZS's second third-party complaint against McLane and Tishman are not.

### E. *The Cross–Motion of PATH And The Port Authority For Summary Judgment Is Denied*

In support of their cross-motion for summary judgment against SZS, PATH and the Port Authority rely exclusively on the pleadings filed by SZS and the contention that criminal activity on the Premises did not create foreseeability of the types of criminal activity sufficient to deem SZS negligent. However, PATH and the Port Authority cannot appeal to SZS's contention on the issue of foreseeability to justify the granting of their cross-motion because SZS's analysis of this issue has been rejected and its Rule 56 motion has been denied. In light of the fact that PATH and the Port Authority have offered nothing further on this record to support their cross-motion for summary judgment against SZS, that motion is denied.

### II. The Motions of SZS's And McLane For Bifurcated Trials Are Denied

#### A. *The Standards of Rule 42(b)*

Rule 42(b), Fed.R.Civ.P., states that a district court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim...." In assessing the usefulness of the Rule 42(b) procedure, the Second Circuit has noted that "[b]ifurcated trials have frequently employed with great success." *In re Master Key Antitrust Litig.,* 528 F.2d 5, 15 (2d Cir.1975), and that "[b]ifurcation ... provide[s a] powerful legal tool[ ] which, by effectively isolating the

issues to be resolved, avoid lengthy and perhaps needless litigation," *United States v. Alcan Aluminum Corp.,* 990 F.2d 711 (2d Cir.1993). This procedural device aids Congress' purpose by "encouraging settlement discussions and speeding up remedial action." *Id.; see also Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir.), *cert. denied sub nom. Cody v. Donovan,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

A district court may order separate trials to prevent the factfinder from being exposed to evidence admitted for the purpose of addressing one claim that would contaminate his mind regarding a different claim. *See Smith v. Lightning Bolt Prods. Inc.* 861 F.2d 363, 370 (2d Cir.1988); *Ismail v. Cohen,* 706 F.Supp. 243, 251 (S.D.N.Y.1989), *rev'd in part on other grounds,* 899 F.2d 183 (2d Cir.1990).

In those situations where one or more parties may be subjected to undue prejudice if claims were tried to the same jury, bifurcation is the preferred solution. *See Katsaros,* 744 F.2d at 278; *see also Zofcin v. Dean,* 144 F.R.D. 203 (S.D.N.Y.1992) (separate trials of issues of liability and damages in personal injury action arising from burns suffered by decedents in automobile accident); *Buscemi v. Pepsico, Inc.,* 736 F.Supp. 1267 (S.D.N.Y.1990) (separate trials of liability and damages in employment discrimination action alleging emotional injuries); *City of New York v. Waterfront Airways, Inc.,* 620 F.Supp. 411 (S.D.N.Y.1985) (joint trial of liability and separate trials of damages in personal injury action arising from collision between taxi floatplane and police helicopter).

The procedural mechanism of Rule 42(b) may be appropriate in certain circumstances to facilitate judicial economy and assist in the expedient resolution of an action. If the issues of liability and damages are separable, it is possible that a trial on the issue of liability alone may lead to the finding that the defendant was not liable. This would save the time and resources of the court and parties in being able to forego a consuming trial of the alleged damages. *See Deagle v. City of New York,* No. 90 Civ. 8203 (LJF), 1991 WL 267765, at *1 (S.D.N.Y. Dec. 4,

1991); *Meistrich v. Executive Money Mgmt., Inc.,* No. 83 Civ. 1636 (JFK), 1987 WL 16963, at *1 (S.D.N.Y. Sept. 10, 1987). However, in the event that liability is found, judicial economy may still be served either by the trial of the damages issue proceeding in an expeditious manner, or by the parties arriving at a settlement agreement in the face of the determination of liability. *See Slater Elec. Inc. v. Indian Head Inc.,* 38 Fed.R.Serv.2d 488, 223 U.S.P.Q. 729, 1983 WL 52356 (S.D.N.Y. 1983).

While a catalog of authorities which have granted Rule 42(b) relief is informative, it is not decisive because Rule 42(b) simply does not give rise to a bright-line test. *See Bowers v. Navistar Int'l Transp. Corp.,* No. 88 Civ. 8857 (SS), 1993 WL 159965, at *1, 1993 U.S.Dist. LEXIS 6129, at *8 (S.D.N.Y. May 10, 1993). Instead, Rule 42(b) requires factual and legal analyses on a case-by-case basis of the record generated by each particular request for bifurcation. *See Haitian Centers Council, Inc. v. McNary,* 144 F.R.D. 191, 192 (E.D.N.Y.1992).

Thus, despite the usefulness of bifurcation, separate trials remain the exception rather than the rule, regardless of the nature of the action, *see Bowers,* 1993 WL 159965, at *1 1993 U.S.Dist. LEXIS 6129, at *6; *Sunenblick v. Harrell,* 145 F.R.D. 314, 317 (S.D.N.Y.1993); and generally, "efficient judicial administration ... favor[s] having only one trial whenever possible." *Buscemi v. Pepsico, Inc.,* 736 F.Supp. 1267, 1271 (S.D.N.Y.1990); *accord Santiago v. City of New York,* No. 90 Civ. 5233 (RWS), 1992 WL 116605, 1992 U.S.Dist. LEXIS 6731 (S.D.N.Y. May, 15, 1992).

A district court has broad discretion to order separate trials and must consider the following factors in deciding a Rule 42(b) motion:

(1) are the issues sought to be separately tried significantly different from one another? (2) are the issues triable by jury or the court? (3) does the posture of discovery as to the respective issues suggest that they should or should not be tried together? (4) will the separate issues require the testimony of different witnesses and documentary proof? [and] (5) will the

party opposing the severance be prejudiced if it is granted?

*Reading Indus., Inc. v. Kennecott Copper Corp.,* 61 F.R.D. 662, 664 (S.D.N.Y.1974) (the *"Kennecott Copper* Factors"); *accord Kronfeld v. Advest, Inc.,* Nos. 85 Civ. 4673 (JFK) & 86 Civ. 9366 (JFK), 1991 WL 176120, at *1, 1991 U.S.Dist. LEXIS 12264, at *3 (S.D.N.Y. Sept. 4, 1991); *Sound Video Unlimited, Inc. v. Video Shack Inc.,* 700 F.Supp. 127, 146 (S.D.N.Y.1988); *Croce v. Kurnit,* No. 78 Civ. 3340 (RWS), slip. op. at *4, 1982 WL 173607 (S.D.N.Y. May 21, 1982) (LEXIS, Genfed library, Dist file).

Against this background of the *Kennecott Copper* Factors, a district court may determine that bifurcation is appropriate:

[w]hen evidentiary proof necessary to establish two or more distinct claims is different for each claim, *see Haitian Centers,* 144 F.R.D. at 192, or prejudice will result to one of the parties from the admission of evidence on one of the claims, *see Ismail,* 706 F.Supp. at 251.

*Bowers,* 1993 WL 159965, at *1, 1993 U.S.Dist. LEXIS 6129, at *7–*8. Or, in contrast, the court may find bifurcation to be inappropriate "where the issues, witnesses and documentary evidence central to both claims overlap or where the party opposing bifurcation will be prejudiced thereby." *Santiago,* 1992 WL 116605, at *2, 1992 U.S.Dist. LEXIS 6731, at *4; *see also White Chem. Corp. v. Walsh Chem. Corp.,* 116 F.R.D. 580, 581 (W.D.N.C.1987).

### B. *Applying The Standards*

SZS and McLane assert that bifurcation is appropriate in the present action on the grounds of undue prejudice and judicial economy: On the one hand, they assert that were the liability and damages issues tried to a single jury, the testimony and evidence regarding Monaghan's condition from the time of the shooting to the present would unduly prejudice the jury on the issue of damages were any party found to be liable; while on the other, were the jury to return a verdict in favor of the SZS and the third-party defendants, then judicial resources would be conserved because a trial of damages would be avoided.

However, *pace* the contentions of SZS and McLane, a review of the *Kennecott Copper* Factors leads to the conclusion that the present action is not an appropriate candidate for bifurcation. First, SZS and McLane have failed to establish that they would be unduly prejudiced were the issues of liability and damages tried to a single jury. While SZS and McLane focus on the brutal nature of attack on Monaghan and on the sympathy that a description of his suffering since March 23, 1987 would invoke, they fail to demonstrate that the situation is truly extraordinary to warrant Rule 42(b) relief. There is no doubt that SZS and McLane may be prejudiced to some extent in the damages phase of the single trial should either or both be found liable. But they have failed to show that this prejudice would be "undue"—that is, that the prejudice would be any more than that which is normally experienced by a defendant who is found liable in a personal injury action involving a violent crime where the issues of liability and damages are tried to a single jury.

SZS and McLane have failed to overcome the fundamental presumption which favors the trial of all issues to a single jury and underlies the assumption of Rule 42(b) that bifurcation, even in personal injury actions, is reserved for truly extraordinary situations of *undue* prejudice. *See Buscemi,* 736 F.Supp. at 1271; *Santiago,* 1992 WL 116605, at *2, 1992 U.S.Dist. LEXIS 6731, at *4. If SZS and McLane were granted the relief they seek on this record based on the assertion of "undue prejudice," the single trial of virtually any personal injury action arising from a violent crime would require bifurcation. There is no exception to the presumption in favor of one trial for personal injury actions involving violent crimes, and the Court declines to take a substantial step in that direction by granting these Rule 42(b) motions on the present record.

Second, the issues sought to be tried separately are inextricably intertwined with each other. In deciding the issue of liability, the jury will need to know why Monaghan, who was conscious when he was found shot in the head on the Premises, is now unable to testify regarding such critical facts as the condi-

tion of the Premises and his reliance on the Defendant and third-party Defendant at the time he was assaulted, and why Monaghan cannot testify regarding his own actions in response to allegations by the Defendant of his contributory negligence.

Third, in light of the interconnectedness of the issues, there will be an inevitable overlap of witnesses and documentary evidence central to both liability and damages claims. This alone defeats the claim of judicial economy insofar as two separate juries would have to be empaneled to hear much of the same evidence. *See Drake v. Handman,* 30 F.R.D. 394, 397 (S.D.N.Y.1962); *In re "Agent Orange" Prod. Liab. Litig.,* 565 F.Supp. 1263, 1276–77 (E.D.N.Y.1983).

Fourth and finally, it follows from these considerations that to grant these motion would cause the Plaintiffs to be prejudiced because they would face the task of trying a substantially similar case twice were the jury to return a verdict in their favor on the issue of liability. The additional interest espoused in Rule 42(b) of "convenience" and "expedition of economy" weighs against the delay and cost of empaneling two juries and hearing similar testimony in two trials. *See Rush v. Oppenheimer & Co.,* 650 F.Supp. 682, 684 (S.D.N.Y.1986).

SZS and McLane have failed to overcome the presumption favoring one trial and satisfy the *Kennecott Copper* Factors. Therefore, their Rule 42(b) motions for separate trials are denied.

### III. The Motions Of SZS And McLane To Exclude Monaghan From The Courtroom At Trial Are Granted

 SZS and McLane have moved to exclude Monaghan from the courtroom during the trial. The Plaintiffs respond that Monaghan's presence in the courtroom would not be disruptive, that his injuries are not hideous as SZS and McLane suggest, and that he has a constitutional right to be present during the trial.

While the Court recognizes that Monaghan's mere presence in the courtroom may have some testimonial value, absent a showing of Monaghan's ability to assist in the

prosecution of this case, he will be excluded from the courtroom except for the purpose of a physical identification as the person on whose behalf the action is brought. On the present record, the Plaintiffs have failed to establish that Monaghan would be able to assist in the prosecution of this case were he admitted into the courtroom. Therefore, the motions of SZS and McLane to exclude Monaghan from the courtroom at trial are granted.

### Conclusion

For the reasons set forth: SZS's Rule 56 motion and the Rule 56 cross-motion brought by the Port Authority and PATH are denied; the Rule 56 motions of McLane and Tishman are granted as to the Plaintiffs' complaint in the *McLane Action;* the Rule 42 motions of SZS and McLane are denied; the motions of SZS and McLane to exclude Monaghan from the courtroom are granted.

It is so ordered.