FRED LOESER et al., Respondents, v NATHAN HALE GARDENS, INC., et al., Appellants.

First Department, February 26, 1980

## APPEARANCES OF COUNSEL

*Norman H. Dachs* of counsel *(Harold M. Foster* and *Shayne, Dachs, Weiss, Kolbrener, Stanisci & Harwood)*, for appellants.

*Geraldine J. Gould* of counsel *(Segan, Culhane, Nemerov & Geen, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

SANDLER, J.

Defendants appeal from a judgment entered on a jury verdict for plaintiffs in a personal injury action arising out of an assault upon plaintiff Fred Loeser by unknown assailants in a parking lot owned and managed by defendants.

At issue on this appeal is the legal sufficiency of the evidence to support the jury's determination of liability with regard to injuries that resulted from a criminal assault by others. In addition, defendants argue that in any event trial errors, particularly in the charge to the jury, require reversal of the judgment.

We are satisfied that the evidence presented was sufficient to present a case appropriate for jury determination and that the verdict was not contrary to the weight of the evidence. On the other hand, we find that the charge to the jury included errors sufficiently substantial to require a reversal of the judgment and the remand of the case for a new trial.

Defendants Nathan Hale Gardens, Inc., and Dwelling Managers, Inc., were the owner and managing agent, respectively, of an apartment building at 3411-19 Irwin Avenue in The Bronx and a large U-shaped outdoor parking lot behind the building. Fred Loeser and his father Ernest Loeser were tenants in the building to whom a parking space was assigned.

The issue of liability principally litigated at trial concerned the defendants' alleged failure to restore to proper functioning large fluorescent lights, installed by the landlord in conformity with the requirements of subdivision 7-a of section 26 of the Multiple Dwelling Law and section D26-19.07 of the New

York City Administrative Code, and which normally illuminated the parking lot.

Although conflicting evidence was presented, the jury was entitled to find that: (1) the automatic timing mechanism controlling the lights in the parking lot was misadjusted during late December, 1974, resulting in their going on during the day and off at night; (2) the time malfunction continued although numerous complaints had been made to an employee of Dwelling Managers during January, 1975; and (3) the parking lot was accordingly dark on January 19, 1975 between 9:15 P.M. and 9:30 P.M. when plaintiff and his father were parking their car in their assigned place and were assaulted by two men who fled after the assault in a waiting car.

In addition, expert testimony was presented that violent crimes of robbery and assault are deterred by lighting in an outside environment.

Evidence was also presented that over a period of several years various crimes had taken place in the parking lot, primarily acts of larceny from automobiles and criminal mischief, none of which involved violent assaults.

Presenting a separate theory of liability, evidence was introduced that in the summer of 1974 a locked-chain device was installed at the entranceway to the parking lot by the landlord, that within a short period the locked chain ceased to function because of a broken locking device, and that it was not repaired up to the time of the incident.

The submission of this issue to the jury as a possible basis for liability was reversible error.

The apparent purpose of the device was to prevent use of the parking lot by unauthorized vehicles. It may be, as urged by the plaintiffs, that a second purpose was to prevent the theft of automobiles. There is no basis in this record, however, for the conclusion that the device was intended to secure tenants using the parking lot against the kind of violent crime that occurred here, or that it could have been reasonably expected to perform that function.

That a criminal intent on committing an assault or robbery in the parking lot would drive a vehicle into the parking lot for that purpose was simply not reasonably foreseeable under the circumstances presented. Nor can it be fairly concluded that the landlord assumed an ongoing duty with regard to such a contingency by the original installation of the device.

The trial court also erred in charging the jury with regard to section 83 of the Multiple Dwelling Law, which in substance requires a janitor or superintendent to reside in an apartment house or within 200 feet of it. This alleged violation, if it in fact occurred, had no conceivable relevance to the incident. Although it is unlikely that the Trial Judge intended to authorize the jury to find negligence contributing to the assault on the basis of this alleged violation, the instruction of the jury on this point, without appropriate qualifying language, had the capacity to confuse needlessly the real issues presented.

The principal remaining issue is whether or not the evidence was legally sufficient to sustain the jury's verdict with regard to liability. We hold that it was.

Essentially two questions are presented. First, did the defendants violate a duty of care owed to the plaintiff? Second, was the violation, if it occurred, a proximate cause of plaintiff's injury?

The principle is now firmly established that landowners owe a "standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability." (See *Basso v Miller,* 40 NY2d 233, 241.)

Long before the Court of Appeals swept aside, in *Basso v Miller,* the traditional classifications among invitees, licensees and trespassers, "the affirmative obligation of landlords to exercise reasonable care to inspect and repair" common areas of the leased premises for the protection of the lessee had been uniformly accepted. (Prosser, Torts [4th ed], pp 405, 406.)

Given the standard of care applicable to the basic relationship, what remains to be determined with regard to this issue is whether a violent assault in the unlighted parking lot was reasonably foreseeable and whether the landlord's conduct was unreasonable in proportion to that danger. *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339; see, also, *Sherman v Concourse Realty Corp.,* 47 AD2d 134; *Kenny v Southeastern Pa. Transp. Auth.,* 581 F2d 351; *Picco v Fords Diner,* 113 NJ Super 465.)

As to whether a criminal event of the kind that occurred here was foreseeable, the evidence presented a jury question. The testimony persuasively documenting the relationship between violent criminal acts and the absence of lighting in an outside environment is emphatically confirmed by common experience.

Of course criminal acts frequently occur in daylight or in lighted premises. When, however, a criminal undertakes to commit a violent crime at night, it is at least a reasonable inference that he has been influenced in his choice of the time by the cover afforded by darkness and that the presence or absence of lighting would be a significant consideration in his determining where and under what circumstances to commit the intended crime.

That general observation has particular validity here in view of the unusual physical circumstances presented. Numerous apartments overlooked the parking lot. It is surely a reasonable judgment that would-be assailants, strangers to the building complex, would have hesitated to enter a brightly illuminated parking lot where they might be observed by tenants looking out of their windows before, during and after the planned crime.

Nor can it seriously be urged that a jury could not reasonably consider the landlord's failure to restore to appropriate operation the fluorescent lights conduct unreasonable in proportion to the danger.

This is not a case in which liability is alleged because the defendants failed to arrange private police protection or otherwise to incur heavy expenses to augment tenant security. (Cf. *Goldberg v Housing Auth. of City of Newark,* 38 NJ 578; *Kline v 1500 Mass. Ave. Apt. Corp.,* 439 F2d 477; *Sherman v Concourse Realty Corp.,* 47 AD2d 134, *supra.)* All that was required was for the defendants to restore the nighttime illumination required by law, which could not have conceivably involved more than the most modest of expenditures and efforts. Surely this was not too heavy a burden to impose.

Turning to the issue of proximate cause, the first question is whether or not the defendants' negligence was in fact a substantial cause of the injuries sustained by the plaintiff. Although it is of course impossible to state with certainty that the assault would not have occurred if the lot had been properly illuminated, it was properly a jury question under all the circumstances to determine whether the absence of the lights in fact contributed substantially to the criminal assault and subsequent injuries. (See *Kenny v Southeastern Pa. Transp. Auth.,* 581 F2d 351, *supra; Picco v Fords Diner,* 113 NJ Super 465, *supra.)*

Nor is there any substance to the contention that the landlord's negligence was not the proximate cause of the

injuries because the immediate cause of the injuries was the criminal act of a third person. It has long been the rule that liability attaches if the danger from the criminal act was foreseeable. In *Lillie v Thompson* (332 US 459, 462) the Supreme Court stated: "That the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence." (See, also, *Sherman v Concourse Realty Corp.,* 47 AD2d 134, 139, *supra;* Restatement, Torts [2d ed], § 449; Prosser, Torts [4th ed], pp 174, 175.)

In *Pagan v Goldberger* (51 AD2d 508) Justice HOPKINS identified with characteristic clarity and insight the guidelines that have been applied by the courts in evaluating the issue of proximate cause. Application of these guidelines unmistakably confirms the sufficiency of the evidence to support the jury's determination here.

The jury could reasonably find that the injuries sustained by the plaintiff were the result of a foreseeable event, intimately related in time and place to the negligence claimed. The status of the parties imposed upon the defendants a duty of reasonable care. No identifiable public policy excludes liability for the injury and indeed public policy would appear to support strongly the right of the plaintiff to be protected against the result of the breach of duty that occurred.

In *Quinlan v Cecchini* (41 NY2d 686, 689) the Court of Appeals restated the traditional roles of the court and jury with regard to liability of landowners in terms that have here a special pertinence. "[I]t [the court] may consider whether the foreseeability of the presence of an entrant on land is too remote, given the nature of the risk and the burdens that would be imposed on a landowner to guard against it. It is also concerned with the weighing of the probability of the harm, the gravity of the harm against the burden of precaution, and other relevant and material considerations from which it can determine whether reasonable persons can differ as to whether the defendant was negligent * * * As in all such cases, '[t]he range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury' ".

Concluding in *Quinlan* that the case was an appropriate one for jury determination, the court said (at p 690) in words that

apply precisely to the facts here presented: "For there was ample proof from which it could be found that the defendant should reasonably have foreseen that, under the conditions that prevailed, it was only a matter of time until someone might be injured. * * * Nor can it be said as a matter of law that it would have been a severe or disproportionate burden for them to have removed the hazard".

For the reasons indicated earlier, the judgment of the Supreme Court, Bronx County, entered April 25, 1978, in favor of the plaintiffs following a jury trial, should be reversed, on the law, and the case remanded for a new trial, with costs to abide the event.

MURPHY, P. J. (dissenting in part). I agree with the majority opinion that the trial court should not have permitted the jury to find the defendant negligent because (i) they allegedly violated section 83 of the Multiple Dwelling Law and (ii) they actually failed to maintain a locked-chain device. I would further find that the trial court erred in refusing to charge that plaintiff Fred Loesser might be contributorily negligent. If the defendants are to be held liable for permitting dangerously dark conditions to exist in the parking lot, then a question is presented as to whether Fred, aware of those conditions for an extended period of time, acted negligently in continuously exposing himself to that peril. (See, generally, Ann. 23 ALR3d 365, Premises Liability: Proceeding in the Dark on Outside Steps or Stairs as Contributory Negligence; Ann. 23 ALR3d 441, Premises Liability: Proceeding in the Dark Across Exterior Premises as Contributory Negligence.) Moreover, a question of fact is presented for the jury as to whether Fred, through his negligence, exacerbated the situation by inadvisedly throwing hot coffee in the face of an assailant who was carrying a shotgun. At the very least, these errors require that a new trial be ordered.

The central point of disagreement in this appeal is whether defendants may be held liable for failing to provide adequate lighting on the night of the occurrence. The majority opinion would permit liability to be promulgated against the defendants on that theory. It suggests that the defendants were not required to take any other protective measures on Fred's behalf. It further hints, without directly stating so, that defendants would not be liable if this same incident had occurred in daylight hours. As will be more fully developed below, the defendants had no duty to protect plaintiff Fred

Loeser in the circumstances of this case. Moreover, defendants' failure to maintain the subject lights was not the proximate cause of Fred's injuries (see, generally, Ann. 43 ALR3d 331, Landlord's Obligation to Protect Tenant Against Criminal Activities of Third Persons).

Plaintiff Fred Loeser argues that the defendants should have reasonably foreseen that he would be assaulted in the parking lot on the evening of January 19, 1975. While this parking lot was situated in a low-crime area in Riverdale, it was foreseeable that Fred might be robbed and assaulted there. Of course, it is foreseeable that any resident of New York City might at any time and in any place become a crime victim. Thus, a debate over the statistical probabilities of an assault on Fred's person on the night under discussion serves little purpose.

The real issue presented to this court has been aptly phrased by the Supreme Court of New Jersey in *Goldberg v Housing Auth. of City of Newark* (38 NJ 578, 583):

"The question whether a private party must provide protection for another is not solved merely by recourse to 'foreseeability.' Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.

"The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it. Whether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."

Plaintiff Fred Loeser was a tenant in Nathan Hale Gardens, a New York City Mitchell-Lama development. The mere relationship of landlord and tenant in this type of housing development does not, in itself, create any special duty upon the landlord to protect the tenant. (Cf. *Bass v City of New York,* 38 AD2d 407, affd 32 NY2d 894.) Furthermore, this record

does not reflect the existence of any rental agreement or agency regulation that would require defendants to provide special protection to the plaintiffs in this parking lot.

However, the evidence does show that Fred and his father were paying no more than $13.50 per month, or $.40 per day, for parking privileges at this site. This rental fee is a small fraction of the figure normally charged for the use of an outdoor parking lot in Bronx County or any other section of New York City. Undoubtedly, this minimal rental charge was an additional benefit of residing in this moderately priced housing development. For the very small rental fee charged, the defendants could not be realistically expected to provide security for this parking lot.

In fact, plaintiffs' proof does not indicate that the tenants were ever promised security while parking their vehicles in this lot. Instead, an analysis of the proof indicates that plaintiff Fred Loeser and the other tenants were simply renting space to park their vehicles at a prohibitively low fee. Although statutory or case law might require the defendants to provide lights to ensure that tenants do not injure themselves upon the physical hazards present in the lot (see, generally, 5B Warren's Negligence, Darkness, § 2, p 545), I find that the defendants had no independent duty, as such, to protect the plaintiffs. Under the criterion set forth in *Goldberg v Housing Auth. of City of Newark* (38 NJ 578, *supra),* it would be unfair to require the defendants to provide lights or any other security for the tenants in this lot. In view of the economic realities of this parking arrangement, the tenants parked at their own risk just as if they were parking on a public street. Parenthetically, I note that the tenants could not park at meters on most public streets for $.40 per day.

As the majority opinion stresses, there was proof in the record that the subject lights were not operative at the time of the occurrence. A violation by the defendants of subdivision 7-a of section 26 of the Multiple Dwelling Law and section D26-19.07 of the Administrative Code of the City of New York would prima facie establish their liability in this case if that violation were the proximate cause of Fred's injuries *(Mermelstein v 417 Riverside Drive,* 25 AD2d 522; *Schabel v Onseyga Realty Co.,* 233 App Div 208; *Wolf v Kaufmann,* 227 App Div 281, app dsmd 254 NY 598). However, assuming the defendants violated subdivision 7-a of section 26 of the Multiple Dwelling Law and section D26-19.07 of the Administrative

Code, that violation did not cause the assault upon plaintiff Fred Loeser.

Any violation on defendant's part was merely an "occasion" for the assault (cf. *Sheehan v City of New York,* 40 NY2d 496, 503; 57 Am Jur 2d, Negligence, § 146, p 502). As has often been stated, no one is ordinarily chargeable with damages because he has not anticipated the commission of a crime by some third party *(Saugerties Bank v Delaware & Hudson Co.,* 236 NY 425, 431). Therefore, while defendants' negligence might have made the assailant's attempt at robbery less difficult to accomplish, that negligence was not the proximate cause of the attempted robbery or the subsequent assault (57 Am Jur 2d, Negligence, § 206, p 581). Clearly, the acts of the assailant were the intervening and supervening cause of Fred's injuries. In a different factual setting, the Supreme Court of North Carolina found that a carrier was not liable to a passenger assaulted upon a train that was unlighted and overcrowded. In dismissing the action, that court similarly found that there was no causal connection between the negligent act of the carrier and the plaintiff's injury *(Chancey v Norfolk & Western Ry. Co.,* 174 NC 351).

For the foregoing reasons, the judgment of the Supreme Court, Bronx County (CHANANAU, J., and a jury), entered April 25, 1978, should be reversed, on the law, and the complaint should be dismissed.

SILVERMAN and ROSS, JJ., concur with SANDLER, J.; MURPHY, P. J., dissents in part in an opinion.

Judgment, Supreme Court, Bronx County, entered on April 25, 1978, reversed, on the law, and the case remanded for a new trial, with $75 costs and disbursements of this appeal to abide the event.