MICHELLE LACELLE, Plaintiff, v HILLS DEPARTMENT STORE, Defendant.

City Court of Watertown, Jefferson County, December 13, 1988

APPEARANCES OF COUNSEL

*Michelle Lacelle* plaintiff *pro se.*

## OPINION OF THE COURT

JAMES C. HARBERSON, JR., J.

### FACTS

Plaintiff went to Hills Department Store to shop. She had her child with her. She put the child in the cart and walked around the store. She had cashed the family paycheck and the money was in her purse which was zipped and closed. While she walked around the store she kept it on her person.

When the plaintiff went to the check-out lane she opened her purse to pay for the purchases. She put the purse on the cart to remove her child from the cart. She turned her back on the purse and a few moments later when she turned back to check out it was gone.

The purse was found minus the cash in it a few minutes later and was turned in to the store by another customer. The store has no special security to protect customers at the check-out area and no warning signs concerning theft. The store has had past problems with money being taken from the cash drawers when cashiers were distracted. Hills has had a couple of purse stealings in the prior year before the plaintiff's loss.

### LAW

The Court of Appeals on June 17, 1976, in *Basso v Miller* (40 NY2d 233), redefined the rules between the possessor of land to one who comes on it: "[W]e have not, until today, abandoned the classifications entirely and announced our adherence to the single standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability." *(Supra,* at 241.)

In Pattern Jury Instructions the comment is: "The duty owed apparently includes * * * the duty to protect against injury caused by the conduct of third persons on the premises, if [the injury] was attributable to defendant's failure to exercise reasonable care in protecting plaintiff from injury". (1 PJI2d 170 [Supp].)

The Pattern Jury Instructions comment concludes: "To recover for injuries caused by acts of criminals on the premises, plaintiff must show that defendant knew or should have known of a probability of criminal conduct likely to pose a

risk of harm to third persons lawfully on the premises and that defendant failed to take reasonable precautions to protect the public, *Iannelli v Powers*, 114 AD2d 157". (1 PJI2d 171 [Supp].)

In *Nallan v Helmsley-Spear, Inc.* (50 NY2d 507) the Court of Appeals discussed a building owner's liability to a person who was criminally harmed by a third person. The court stated that:

"the history of criminal activities in the * * * [b]uilding gave rise to an obligation * * * to take reasonable steps to minimize the foreseeable danger to those unwary souls who might venture onto the premises. Such an obligation is recognized by our law, as but a natural corollary to the landowner's common-law duty to make the public areas of his property reasonably safe for those who might enter * * *. In this connection we find the rule stated in the Restatement instructive:

" 'A possessor of land who holds it open to the public * * * is subject to liability to members of the public while they are upon the land * * * for physical harm caused by the * * * intentionally harmful acts of third persons * * * and by the failure of the possessor to exercise reasonable care to

" '(a) discover that such acts are being done or are likely to be done, or

" '(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it' (Restatement, Torts 2d, § 344)." *(Nallan v Helmsley-Spear, Inc., supra,* at 518-519.)

The *Nallan* court, recognizing the balance between reasonableness and impossibility in the duty of a possessor of property to a person coming onto it, said that as such the possessor of land is not an insurer of the visitor's safety. Thus, even where there is an extensive history of criminal conduct on the premises, the possessor cannot be held to a duty to take protective measures unless it is shown that he either knows or has reason to know from past experience "that there is a likelihood of conduct on the part of third persons * * * which is likely to endanger the safety of the visitor" (Restatement [Second] of Torts § 344, comment f). Only if such conditions are met may the possessor of land be obligated to: " 'take precautions * * * and to provide a reasonably sufficient number of servants to afford a reasonable protection' " *(Nallan v Helmsley-Spear, Inc., supra,* at 519).

This admonitory language of the *Nallan* decision *(supra)* should be heeded:

"The real issue presented to this court has been aptly phrased by the Supreme Court of New Jersey in *Goldberg v Housing Auth. of City of Newark* (38 NJ 578, 583):

"The question whether a private party must provide protection for another is not solved merely by recourse to 'foreseeability.' Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.

" 'The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it. Whether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution' " (as cited in *Loeser v Nathan Hale Gardens,* 73 AD2d 187, 194).

### DECISION

In deciding this case reference is made to the well-written opinion of Justice Bracken in *Iannelli v Powers* (114 AD2d 157, *supra).* This Second Department case provides an excellent guide for the legal principles to be applied in this case.

The defendant, Hills Department Store, is a large retail establishment. Unlike other discount stores, Hills does not accept credit cards. It advertises how a "cash only" policy keeps their prices lower to the customer. This same advertising alerts pickpockets and thieves that Hills' customers come with cash so a strong possibility exists a purse or wallet taken from a Hills' customer will contain more than the usual amount of cash.

The testimony by the store's representative was 45 to 50% of its customers pay in cash and the usual cash sale is about $15 to $17. The manager testified the store is aware of theft problems from its check-out area. The store has security but no security cameras usually found in most other stores.

Special precautions taken to hinder a thief from stealing cash from the store cash drawers are in the record. The manager said that no steps are taken in this same area to protect the customers' cash. This is so even though the store invites the use of cash only and it is in the area where the store funds are at greatest risk of theft from their experience.

The plaintiff was in the check-out line, put her closed purse on the child seat of the shopping cart, turned her back to deal with a child and when she turned around the purse was gone. It was found without the cash and turned in at lost and found a few minutes later. The manager testified that there have only been 1 or 2 reports of a theft similar to the plaintiff's in the store records over the last year.

The test is whether a store that encourages cash-only customers has a foreseeable duty to protect them from such a theft when it occurs at the one location—the cashier's desk—where the store has the most concern for its own cash being taken, if a cashier were momentarily distracted.

The store provides child seats in the carts to accommodate the customers' children. When a shopper reaches the check-out lane it is reasonable to assume—therefore foreseeable—that the child could be removed to empty the cart. At that moment the Hills' customer could reasonably be expected to put a cash-laden purse on the cart seat when dealing with the child and while being so occupied be extremely vulnerable to having the purse snatched.

The store has protected itself from the same happening due to a distracted cashier-employee. Does it have the same duty to the customer in this "cash in the open area"?

The manager testified that no other precautions are taken. There are no signs warning cash-carrying customers of the store's admitted concern for theft at the cash-out area nor does the store use cameras, guards or floorwalkers to protect this part of the store where such a larceny is most likely to happen.

What burden, then, does the store have in protecting a customer from a third party stealing their money at the check-out line?

"The traditional role of the courts to examine the facts in each particular case triggers consideration of whether the foreseeability of risk from a criminal to the safety of the occupant is either remote or likely, and whether the burden to

protect against the risk is unreasonable". *(Maricle v Mick,* 108 AD2d 1048, 1049.)

A fair view of the facts in this case shows that Hills knew the check-out area was the target of criminals stealing cash where both customers and merchant handle money in the open. Hills could reasonably expect shoppers using carts with child seats to remove the child at this location or deal with an impatient child grabbing at six-for-a-dollar items invariably surrounding the shopper in the check-out lane, momentarily distracting a parent from watching their purse. With all these possible distractions one could foresee the shopper is ripe for robbing in a cash-only store by a sneak thief: "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension" *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344).

The *Palsgraf* quote was made by the Appellate Division, Fourth Department, in *Burgundy Basin Inn v Watkins Glen Grand Prix Corp.* (51 AD2d 140, 144) to support the conclusions: "The risk reasonably to be perceived in promoting a mass gathering of the magnitude alleged certainly included the possibility that the property in the area would be destroyed if adequate crowd control and security measures were not in effect."

The court added that beyond what should have been perceived concerning crowd control, it was actually perceived in the agreement with the parties.

■ It is the opinion of the court that Hills should have foreseen a risk to "business invitees" under the circumstances outlined above at the check-out area from the same type of theft it protected its cash from—the sneak thief.

Once this risk is ascertained does the store have a duty to warn and/or protect the customer? A reasonable burden might be imposed without creating an impossible situation as heretofore warned against in *Loeser (supra).* The store could post a sign at each entrance to the store and at the check-out lanes warning customers to watch their purse, warnings could be made over the same store sound system used to announce blue-light specials between musical interludes and the same floorwalkers used to protect the store's interests around the check-out area could be on the lookout for situations where the customer is distracted and a thief may appear. These simple precautions would cost very little and would fulfill the

store's duty to warn customers in a cash-only store at the check-out counter one should keep an eye out for thieves. This duty was breached in this case by the defendant. The only questions left are, was the breach of the duty the proximate cause of the plaintiff's loss and to what extent, if any, should the plaintiff share in the loss due to her own negligence?

The question of proximate cause has been answered in *Kush v City of Buffalo* (59 NY2d 26). In that case a third party caused the actual harm (as in this case, the thief). The defendant did nothing directly to harm the injured person, further, the defendant contended correctly *(supra,* at 33): "that an intervening * * * criminal act will generally sever the liability of the original tort-feasor (see *Perry v Rochester Lime Co.* [219 NY 60] * * *)" but the court went on to conclude: "That doctrine has no application when the * * * criminal intervention of a third party * * * is reasonably foreseeable." *(Supra,* at 33.)

In this case the store could have reasonably foreseen the type of theft in question and actually did take steps to protect its own cash based on this knowledge. Thus: "When the intervening, intentional act of another is itself the foreseeable harm that shapes the duty imposed, the defendant who fails to guard against such conduct will not be relieved of liability when that act occurs." *(Kush v City of Buffalo, supra,* at 33.)

■ The remaining question is to what degree had the injured party been at fault in her own loss? The plaintiff in this case had the family paycheck cashed and the money in her purse which was zippered and closed. Except for the moment she placed the purse on the cart at the check-out she had it secured on her person. She was in a public place and had some obligation to guard against theft at all times wherever she had gone that day. One might say that while the store had a duty to warn and in a limited way protect customers in the check-out area, the customers had an equal obligation to care for their own cash. The "every man for himself" philosophy has been softened by the courts when reviewing relationships between parties.

In *Basso,* Chief Judge Breitel noted:

"As the economy shifted from an agrarian to an industrial base and personalty replaced realty as the principal basis of wealth, a corresponding change in social policy, one less favorable to the landowner or possessor occurred. No longer does the policy of unrestricted freedom to use one's land,

which has usually meant no more than a desire to be free of the burden and expense of taking precautions, inevitably outweigh considerations of human safety (see Bohlen, Fifty Years of Torts, 50 Harv L Rev, at p 736).

"The law, of course, has not been insensitive to this shift in social policy. Instead, the courts, through the common-law process, have progressively struck a better balance between the competing social policies." *(Basso v Miller,* 40 NY2d 233, 246, *supra; see also, Park W. Mgt. Corp.,* 47 NY2d 316; *Caceci v Di Canio Constr. Corp.,* 72 NY2d 52.)

In each of these cases the court has attempted to lessen the harsh effects of concepts governing relationships during the last century and the first part of this century. If one does a disservice to another there is a new accountability.

The judgment of this court, with the current trend in mind, is to allow recovery against Hills for a part of the plaintiff's loss because while Hills took steps to protect its interests against an acknowledged danger of theft at the check-out, it failed to give its customers a simple warning so they could protect themselves.

Using as a guide CPLR article 14-A, the court apportions the culpable conduct between the plaintiff and defendant, 75% to the defendant and 25% to the plaintiff. The plaintiff is awarded 75% of her loss.

The judgment is for $398.25 (.75 × $531 = $398.25) together with $5.25 in costs.