[620 NYS2d 333]

Arturo Leyva, Respondent, v Riverbay Corporation, Appellant.

First Department, December 1, 1994

APPEARANCES OF COUNSEL

*Richard E. Lerner* of counsel, New York City *(Glenn Dienstag* and *Eugene Boul* on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for appellant.

*David B. Turret* of counsel, New York City *(Marla L. Schiff* on the brief; *Julien & Schlesinger, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the issue of whether a private owner of a large housing complex may, without any showing that one of its many outdoor public walkways presents a danger to pedestrians, be held liable to a person criminally assaulted on that walkway on the ground that, had the owner exercised reasonable control over its premises, it would have observed the perpetrators before they assaulted their victim and thereby prevented the crime.

Co-Op City, owned by defendant Riverbay Corporation (Co-Op City), is a complex of approximately two square miles, with more than 32 miles of sidewalks and pathways, in which approximately 55,000 people reside. It consists of over 35 high-rise buildings and, including triples and townhouses, over 200 residential buildings in all, as well as several shopping centers, garages, community centers and stores.

On January 28, 1991, at 11:00 P.M., at the conclusion of his shift, plaintiff, a Co-Op City employee, left the Co-Op City community center where he had been working and began walking on a paved pathway leading away from the center in the direction of his home, also in Co-Op City. As he was proceeding down the pathway, plaintiff, seeing two men on another path which intersected his, slowed to allow them to pass. When the two men stopped and looked at him, plaintiff, apprehensive, turned and tried to return to the community center. One of the men ran toward plaintiff while the other pointed a handgun at him. Plaintiff stopped, as ordered, and, when the gunman asked for money, responded, "I don't have any." When plaintiff attempted to take out his wallet to convince his assailants of that fact, the other man pointed a

shotgun at his head. Convinced that plaintiff indeed had no money, the man with the shotgun left, leaving behind his confederate, who was pointing his handgun at plaintiff's chest. As plaintiff tried to back away, the man who stayed behind lowered his gun, pointing it at plaintiff's right leg. Aware of a dumpster behind him, plaintiff began walking backwards, hoping to hide by the dumpster. When plaintiff reached the dumpster and attempted to hide behind it, the man with the handgun shot him in the thigh and fled. Plaintiff could see both men enter a minivan parked about 30 to 40 feet away on the service road of the Hutchinson River Parkway. A couple parking their car on the same road drove plaintiff to a nearby security booth, from which the police and an ambulance were summoned.

After joinder of issue, Co-Op City moved for summary judgment, arguing, *inter alia,* that it owed no duty to plaintiff to protect him from injuries perpetrated by unknown criminally bent third parties in an area where there was no substantial history of prior criminal activity. In denying the motion, the IAS Court, insofar as is relevant to the disposition of the appeal, found triable issues of fact as to whether prior incidents in the vicinity, some 200 feet away from the incident in question, gave Co-Op City notice of criminal activity and, if so, whether its security force was adequate and whether it should have focused its resources in the area where the crime occurred. This appeal followed. We reverse, grant summary judgment and dismiss the complaint.

The possessor of land is under a common-law duty to maintain the public areas of his property in a reasonably safe condition for those who use it. *(Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 519; *Basso v Miller,* 40 NY2d 233, 241; *see,* Restatement [Second] of Torts §§ 359-360.) This duty includes the obligation to take minimal precautions to protect members of the public from the reasonably foreseeable criminal acts of third persons. *(Miller v State of New York,* 62 NY2d 506, 513; *Nallan v Helmsley-Spear, Inc., supra,* at 519.)

Since the possessor of land, be he landowner or leaseholder, is not an insurer of the safety of those who use his premises *(Nallan v Helmsley-Spear, Inc., supra,* at 519; *Iannelli v Powers,* 114 AD2d 157, 161, *lv denied* 68 NY2d 604), he cannot, even in the face of a prior history of criminal activity on the premises, "be held to a duty to take protective measures unless it is shown that he either knows or has reason to know from past experience 'that there is a likelihood of conduct on

the part of third persons * * * which is likely to endanger the safety of the visitor' " *(Nallan v Helmsley-Spear, Inc., supra,* at 519, quoting Restatement [Second] of Torts § 344, comment *f).* It is that knowledge, actual or constructive, that imposes the obligation to " 'take precautions * * * and to provide a reasonably sufficient number of servants to afford a reasonable protection.' " *(Supra,* at 519, quoting Restatement [Second] of Torts § 344, comment *f.)*

In *Nallan (supra),* for instance, the plaintiff was shot by an unknown assailant after normal business hours in the unattended lobby of the defendant's building, in which, in the 21 months preceding the shooting, there had been 107 reported crimes, including at least 10 committed against the person, although none were shown to have been committed in the lobby. On these facts, the Court of Appeals found that the plaintiff made out a prima facie case in negligence, concluding that "a rational jury could have found from the history of criminal activity in the other parts of the building that a criminal incident in the lobby was a significant, foreseeable possibility." (50 NY2d, *supra,* at 520.)

Unlike the victim in *Nallan (supra),* however, plaintiff was assaulted, not in the restrictive confines of the lobby of a building with its easy amenability to the posting of guards and sign-in and sign-out procedures, but on an obscure secondary outdoor walkway of a sprawling residential complex of over two square miles with, as in any large urban outdoor setting, its innumerable opportunities for the criminally disposed to waylay the unwary and defenseless. In this connection, the Court of Appeals has aptly noted, "[T]he urban environment includes many nooks and crannies * * * which afford malefactors the privacy they need to commit their misdeeds." *(Waters v New York City Hous. Auth.,* 69 NY2d 225, 230.)

As this record shows, plaintiff's assailants, both armed, picked on a lone pedestrian on a desolate pathway, availing themselves of that particular site's proximity to a parkway and the opportunity it provided for a speedy vehicular getaway. They shot plaintiff in frustration when they were unable to complete their mission successfully and escaped in their car. The entire incident lasted a matter of minutes. It would be an unreasonable burden to impose upon Co-Op City the duty of preventing such a random act of violence, which could have occurred anywhere on its over 32 miles of sidewalks and

pathways. *(See, Matter of Sanchez v New York City Hous. Auth.,* 194 AD2d 613.)

Moreover, unlike *Nallan (supra),* plaintiff has failed to produce evidence of recurring criminal activity to justify any greater security measures than were shown to be in place on the night of the incident. All that was shown were eight isolated incidents in the two-year period preceding the incident in question, the most recent of which took place six months earlier. And, while proof of foreseeability is not necessarily limited to proof of crimes actually occurring in the specific location where the underlying incident took place *(Jacqueline S. v City of New York,* 81 NY2d 288, 294), it is a fact that in the past two years no prior criminal activity had been reported on this particular walkway.

Nor is this case analogous to *Loeser v Nathan Hale Gardens* (73 AD2d 187), relied upon by plaintiff, where this Court found the evidence sufficient to sustain a finding of liability for an assault perpetrated by unknown assailants in an outdoor parking lot behind an apartment building, both of which were owned and operated by the defendants. Liability was predicated upon the defendants' failure to restore to proper functioning two large fluorescent lights, installed in conformity with a statutory requirement, which normally illuminated the area. There was expert testimony that crimes of robbery and assault are deterred by lighting in an outside environment.

No such showing was made here. In fact, there is no showing as to what type of security measure would have prevented this incident, other than, presumably, the positioning of a patrol officer on the particular walkway, an extraordinary precaution given the meager record of prior criminal incidents shown here. But, if that was what would have been required, every walkway, at specified intervals, would have had to be similarly patrolled. Since Co-Op City does not have to insure the safety of those who use its public streets, it had no such obligation.

On this record, Co-Op City has met its obligation to maintain "minimal security measures" of its public ways in the face of a foreseeable criminal threat to its users. *(Miller v State of New York,* 62 NY2d, *supra,* at 513.) It maintains a security staff of over 100 persons, which provides 24-hour surveillance seven days a week for both the interior and exterior of its buildings, as well as its sidewalks, walkway and pathways, augmented by the New York City Police Depart-

ment, which does some patrolling of Co-Op City's public streets. At the time plaintiff was shot, 20 to 30 security officers were on patrol. Co-Op City is obliged to provide reasonable security measures not optimal nor the most advanced security system available. *(See, Tarter v Schildkraut,* 151 AD2d 414, 415, *lv denied* 74 NY2d 616.)

Strong public policy considerations militate against imposing liability upon owners for incidents of criminality which occur on public walkways and are committed by persons over whom they have no control. Co-Op City is an open community in an open society. It is not gated, nor a fortress; it cannot, without just cause, prevent access to its common outdoor areas. Nor would "the important public goals of minimizing crime and encouraging the maintenance of urban property * * * be advanced by expanding the scope of landowners' duties" so as to hold it accountable for the type of assault that occurred here. *(Waters v New York City Hous. Auth.,* 69 NY2d, *supra,* at 230.) A contrary conclusion would expose Co-Op City and other similarly situated landowners to a virtual limitless liability. *(Supra.)*

Accordingly, the order of the Supreme Court, Bronx County (Barry Salman, J.), entered September 3, 1993, denying defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs or disbursements, and the motion granted.

MURPHY, P. J., ROSENBERGER and TOM, JJ., concur.

Order, Supreme Court, Bronx County, entered September 3, 1993, which denied defendant's motion for summary judgment dismissing the complaint, reversed, on the law, without costs or disbursements, and the motion granted.