OPINION OF THE COURT
Randolph Jackson, J.
"Your visitation shall receive such thanks as fits a king’s remembrance.” (Hamlet, act II, scene II.)
*862 This is a case of apparent first impression concerning the duty of an owner of property to protect a visitor to an outdoor area of that property against harm committed by a criminal with a relationship to the property.
FACTS
The sad circumstances of this case are well known to the people of New York. On December 17, 1992, Patrick F. Daly was shot to death by three teenagers at the Red Hook Housing Project in Brooklyn. Mr. Daly, the principal of P.S. 15, left the school on the morning of the incident to find a student who had walked out of school without permission.
At approximately 11:48 a.m., police received a call of shots fired at an outdoor area of the Red Hook Housing Project. Upon their arrival, the police officers found Mr. Daly lying face up with a gunshot wound to the right chest area. Mr. Daly was taken to Long Island College Hospital where he was pronounced dead at 12:10 p.m.
On December 18, 1992, police from the 76th Precinct arrested Shamel Burroughs. In June of 1993, he and two others were convicted in the death of Mr. Daly.
At the time of his arrest, Shamel Burroughs gave his address as 15 Mill Street, No. 6A, Brooklyn, New York 11231, an apartment within the Red Hook Housing Project. The New York City Housing Authority (NYCHA) disputes the claim that Mr. Burroughs resided within the project and submits the occupants’ affidavit of income to show that Mr. Burroughs’ aunt, Martha Burroughs, was the tenant of record and that she lived in the apartment with her son, Naquwan Williams, and her daughter, Tenille Burroughs. Defendant, NYCHA, claims that Shamel only occasionally stayed in the apartment.
On February 24, 1993, Madeline E. Daly, the widow of Patrick F. Daly, and the administratix of his estate, served a notice of claim on the NYCHA and others seeking damages for the conscious pain and suffering of the decedent, and the pecuniary loss suffered by his wife and children arising from the wrongful death of decedent.
Defendant, NYCHA, now moves for an order dismissing the summons and complaint, pursuant to CPLR 3211, or in the alternative CPLR 3212, in favor of the NYCHA.
*863 DISCUSSION AND CONCLUSIONS OF LAW SPECIAL DUTY
That portion of plaintiffs complaint alleging that the NY-CHA breached a special duty of protection owed to the decedent is dismissed.
Where a governmental defendant such as the NYCHA is alleged to have breached a duty which is by its nature governmental, such as a failure to provide police protection, liability may only be imposed upon a showing that it breached a special duty to the plaintiff. (De Long v County of Erie, 60 NY2d 296 [1983].) The elements of a special relationship are: "(1) an assumption by the [governmental actor], through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the [governmental actor’s] agents that inaction could lead to harm; (3) some form of direct contact between the [governmental actor’s] agents and the injured party; and (4) that party’s justifiable reliance on the [governmental actor’s] affirmative undertaking.” (Cuffy v City of New York, 69 NY2d 255, 260 [1987].)
The plaintiff offers no basis, either in her pleadings or in her answering papers to this motion, for a finding that an issue of fact exists as to whether there was a special relationship between the deceased and the NYCHA. As the Court stated in Zuckerman v City of New York (49 NY2d 557, 562 [1980]), "mere conclusions, expressions of hope or unsubstantiated allegations * * * are insufficient” to defeat a motion for summary judgment.
With respect to plaintiff’s argument that the motion to dismiss the claim based on a special relationship between the decedent and the NYCHA should be denied pending completion of discovery, such a ruling "would result in impermissibly sanctioning [a] fishing expedition[ ] premised upon surmise, conjecture and speculation.” (Kennerly v Campbell Chain Co., 133 AD2d 669, 670 [2d Dept 1987].)
nycha’s duty
Ordinarily, on a motion to dismiss pursuant to CPLR 3211 (a) (7), the court accepts the facts as alleged in the complaint as true and accords the plaintiff the benefit of every possible favorable inference. The only determination the court is required to make is whether the facts as alleged fit within any *864 cognizable legal theory. (Morone v Morone, 50 NY2d 481, 484 [1980].)
A landlord may be held liable for the personal injury inflicted upon a tenant or guest by a criminal intruder in a common area of the building if the landlord should have anticipated a risk of harm from criminal activity to persons on the premises. (Miller v State of New York, 62 NY2d 506 [1984].)
It is the plaintiffs contention that the NYCHA failed in its "obligation to take minimal precautions to protect members of the public from the reasonably foreseeable criminal acts of third persons.” (Iannelli v Powers, 114 AD2d 157, 161 [2d Dept 1986] [citations omitted].)
In Nallan v Helmsley-Spear, Inc. (50 NY2d 507, 519 [1980]), the Court held that:
" 'A possessor of land who holds it open to the public * * * is subject to liability to members of the public while they are upon the land * * * for physical harm caused by the * * * intentionally harmful acts of third persons * * * and by the failure of the possessor to exercise reasonable care to
" '(a) discover that such acts are being done or are likely to be done, or
" '(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it’ [citation omitted].
"Of course, a possessor of land, whether he be a landowner or a leaseholder, is not an insurer of the visitor’s safety. Thus, even where there is an extensive history of criminal conduct on the premises, the possessor cannot be held to a duty to take protective measures unless it is shown that he either knows or has reason to know from past experience 'that there is a likelihood of conduct on the part of third persons * * * which is likely to endanger the safety of the visitor’.”
The plaintiff argues that if it can be shown that the NYCHA was aware that there was recurring violence on the common areas of the project, then the NYCHA had a duty to provide security to protect passersby. Furthermore, the plaintiff claims that if the NYCHA was aware that a tenant of the project was engaged in or supporting criminal activity, it was duty bound to take steps to evict that tenant.
The NYCHA claims that the courts of New York have consistently declined to impose liability upon landlords from crimes that occur in outdoor areas open to the general public. *865 (See, e.g., Waters v New York City Hous. Auth., 116 AD2d 384 [2d Dept 1986], affd 69 NY2d 225 [1987]; Martin v New York Univ., 181 AD2d 428 [1st Dept 1992]; Matter of Sanchez v New York City Hous. Auth., 194 AD2d 613 [2d Dept 1993]; Smith v Fishkill Health-Related Ctr., 184 AD2d 963 [3d Dept 1992].)
The Court in Waters (116 AD2d, supra, at 388) stated that: "The potentially deleterious ramifications of allowing the plaintiffs’ claim are enormous. Stated succinctly, our dissenting colleagues would impose an unreasonable duty upon those who own or control property to guard against the wanton acts against passersby on the street by third persons over whom the former exert no control whatsoever. As per this mode of reasoning, owners of private residences could conceivably be held liable for injuries received by a pedestrian who is forced into an unlocked dwelling and assaulted there by a third-party trespasser * * * To subject property owners to such boundless liability is, in our view, grossly unfair.”
All of the cases cited by the NYCHA in support of its argument that there should be no liability for crimes which occur in outdoor areas open to the general public have one circumstance in common. The defendants in those cases had no control over the perpetrator. As the Court stated in Leyva v Riverbay Corp. (206 AD2d 150, 155 [1st Dept 1994]), a decision attached to the NYCHA’s papers: "Strong public policy considerations militate against imposing liability upon owners for incidents of criminality which occur on public walkways and are committed by persons over whom they have no control. Co-Op City is an open community in an open society. It is not gated, nor a fortress; it cannot, without just cause, prevent access to its common outdoor areas.”
In Leyva (supra), the plaintiff was accosted and shot by a perpetrator, who had no connection with the complex, on an obscure walkway within the Co-Op City development in the Bronx.
The plaintiff in the instant action is arguing that the shooting was carried out, in part, by a tenant, or resident of the project. It is the plaintiff’s contentions that if the NYCHA knew that criminal activity was being carried out by someone living in the complex, then the NYCHA should have taken steps to evict the person from the project.
This court is being asked to determine if the NYCHA had a duty to protect a visitor to the property from an outdoor assault by a tenant if the NYCHA knew that the tenant was *866 involved in criminal activity. While there is a significant amount of case law on this topic, a scenario in which a perpetrator with a relationship to the buildings harms a visitor in an outdoor area of the property has not yet been addressed by the appellate courts of this State. It is in that context that this is a case of apparent first impression.
The Court of Appeals decision in Muniz v Flohern, Inc. (77 NY2d 869 [1991]) is instructive in this matter.
In Muniz (supra), the infant plaintiff, a passerby, was injured during an attempted robbery of a street front store located in a building owned by the defendants. Shots or pellets from a shotgun discharged by the robber from inside the store struck the plaintiff, permanently blinding him. Plaintiffs alleged that the tenant of the store conducted drug-trafficking activities in the premises and that although the defendants were aware of the illegal use, they made no attempt to interdict it.
The Court of Appeals, under the particular circumstances of that case, held that the defendant owed no duty to the infant plaintiff. The Court determined that: "There was no relationship between defendants and the gunman who robbed the streetfront store of their building. Nor was there any relationship between the attempted robbery and the illicit drug activity such as to require defendants to attempt to control the conduct of either the tenant or the gunman. Moreover, there was no relationship between defendants and the infant plaintiff requiring defendants to afford protection from potential dangers springing from the tenant’s illicit drug trafficking in the streetfront store.” (77 NY2d, supra, at 870 [citations omitted].)
As the Court of Appeals in Waters (69 NY2d, supra, at 230) stated: "[L]ogic and public policy weigh heavily in favor of confining the scope of a landowner’s duty to protect against criminal acts to tenants and others who might reasonably be expected to be on the premises.”
In the present case, the plaintiff is alleging that there was a relationship between the defendant and at least one of the perpetrators. At the time of the arrest, Shamel Burroughs told the police that he lived in the housing project. Furthermore, Mr. Daly had a relationship to the property in that he was a visitor to the project searching for a missing student.
If the NYCHA had control over one or more of the perpetrators, imposing liability for an outdoor shooting of a visitor to *867 the premises would not subject the NYCHA and other landowners to virtually limitless liability and, therefore, would not violate public policy. (See, Waters v New York City Hous. Auth., 69 NY2d, supra, at 230.)
Discovery in this case is in its initial stages. While it is true that much of plaintiffs information concerning the involvement of the perpetrators in illegal gang and drug activity comes from secondary sources, such as newspaper accounts of the incident and arguments of counsel in the criminal proceeding, this is not a situation where plaintiff has no basis for her allegation and is engaging in a "fishing expedition[ ] premised upon surmise, conjecture and speculation.” (Kennerly v Campbell Chain Co., supra, at 670.)
It is this court’s determination that the NYCHA’s motion be denied without prejudice pending the completion of outstanding discovery including examinations before trial. (CPLR 3212 [f].) It is apparent that certain information as to the knowledge of the NYCHA as to criminal activity on its property by persons residing there is in its exclusive control. (Terranova v Emil, 20 NY2d 493 [1967].)