[628 NYS2d 82]

Daniel Rodriguez, Respondent, v New York City Housing Authority, Appellant.

First Department, June 15, 1995

## APPEARANCES OF COUNSEL

*George T. Delaney* of counsel *(Edward P. Dunphy* on the brief; *Thomas A. Stickel,* attorney), for respondent.

*Bevan M. Watt* of counsel *(Thomas J. Mulligan* and *Mark A. Slama* on the brief; *Windels, Marx, Davies & Ives,* attorneys), for appellant.

### OPINION OF THE COURT

TOM, J.

This is a personal injury action in which plaintiff Daniel Rodriguez alleges that on the night of March 4, 1990, he was severely beaten and robbed by multiple, unidentified perpetrators in an open-air parking lot (the Parking Lot) owned and operated by defendant New York City Housing Authority (the Housing Authority).

After commencement of this negligence action, defendant moved for summary judgment dismissing the complaint on the grounds that plaintiff failed to make out a prima facie case against the Housing Authority, and that defendant had no actual or constructive notice of the alleged defective lighting condition. The IAS Court denied the motion and defendant appeals.

During the 50-h hearing and at an examination before trial, Mr. Rodriguez testified that on the date in issue, while visiting

his mother in the Gompers Houses, an apartment complex owned, operated and maintained by the Housing Authority, he left the apartment at approximately 11:00 P.M. to go to a local grocery store for his mother.

Upon exiting the building, plaintiff traversed the Parking Lot, which is also part of the Gompers Houses complex. The Parking Lot is utilized by tenants of the building, as well as Housing Authority employees, and accommodates approximately 70 vehicles. Two pedestrian pathways are connected to the parking area, one of which leads to the apartment buildings and the other to the sidewalk on Pitt Street. The Parking Lot is illuminated by either one (plaintiff's and his mother's testimony) or three (a Housing Authority employee's testimony) 20-foot-high poles with sodium vapor candescent lights mounted on top. No blueprints or plans were submitted to resolve the issue of exactly how many lights were in the lot at the time of the incident.

Plaintiff claims that while he was walking through the Parking Lot, he noticed that the only light pole in the lot was not functioning and the area was dark. While returning from the store to his mother's apartment, plaintiff again traversed the Parking Lot. As he was nearing the light pole to reach the smaller pedestrian entrance, plaintiff avers that at least three unknown assailants threw a cloth over his head from behind and struck him twice on his legs with a hard, pipe-like object causing him to fall. Mr. Rodriguez was then kicked, beaten and robbed of approximately $3 and his jacket. Plaintiff was later found slumped against a fence by a neighbor, who assisted him to his mother's apartment. The police and an ambulance were summoned, the latter of which transported plaintiff to Bellevue Hospital where it was determined that among other injuries, plaintiff had two broken ankles, one of which required the insertion of a metal plate and screws during surgery. Plaintiff was hospitalized for approximately two weeks.

Plaintiff testified that he was unaware if anyone in his family had complained about the lighting conditions in the Parking Lot, although he never had personally. Plaintiff also testified that the area around the building was a high-crime area; that although he did not know of specific complaints, he had witnessed a number of assaults over the years in the vicinity (plaintiff had resided with his mother for a number of years before moving out six months earlier); and that drug

activity in the immediate area was rampant. Plaintiff's mother testified that she was able to view the Parking Lot from her apartment window and that the light in question had not been functioning for at least three months prior to the incident.

The assistant superintendent of the housing complex averred that the buildings in the housing complex shared the Parking Lot; that he believed there were three light poles situated in the lot; that he had conducted a record search for work tickets concerning the parking lights and found none; and that he did not observe any nonfunctioning lighting in the lot prior to the date of the alleged incident nor could he recall any tenants complaining about them. In a subsequent affidavit, the same employee stated that there were three light fixtures in the Parking Lot and, even if one was malfunctioning, two others remained to illuminate the lot.

The IAS Court, in its decision, specifically noted that defendant's motion to dismiss did not rest upon the ground that the attack was not foreseeable based on lack of notice of prior criminal activity in the vicinity *(see, Jacqueline S. v City of New York,* 81 NY2d 288), but rather, sought dismissal only upon the ground that the alleged defective lighting condition was not a proximate cause of plaintiff's injuries. The court then held that nonworking lighting in a parking area may give rise to a negligence claim and, with respect to the constructive notice of the lighting defect, Justice Lebedeff concluded that plaintiff's mother's affidavit raised a triable issue of fact. The court further held that Mr. Rodriguez' statement in his deposition testimony that the lot could not be observed from his mother's front window did not contradict the mother's testimony that it was visible from the rear window and, therefore, that the mother's testimony should not be deemed noncredible. Defendant appeals and we now affirm.

■ It is a well-established principle that a party who possesses realty, either as an owner or tenant, has a duty to exercise reasonable care in order to maintain the property in a safe condition, which duty includes the undertaking of minimal precautions to protect the public from the reasonably foreseeable criminal acts of third persons *(Provenzano v Roslyn Gardens Tenants Corp.,* 190 AD2d 718, 720; *Vangeli v Schneider,* 194 AD2d 916, 917; *Newell v Swiss Reassurance Co.,* 181 AD2d 505, 506; *Carroll v Ar De Realty Corp.,* 167 AD2d 216; *Iannelli v Powers,* 114 AD2d 157, *lv denied* 68 NY2d 604; Prosser and Keeton, Torts § 57, at 392 [5th ed

1984]). This duty arises by virtue of the owner's control over the property "for the obvious reason that the person in possession of property ordinarily is in the best position to discover and control its dangers" (Prosser and Keeton, *id.,* at 386; *see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 519).

In *Loeser v Nathan Hale Gardens* (73 AD2d 187), this Court decided the issue as to whether an inoperable light in a parking lot can give rise to a valid claim for an assault under remarkably similar facts, in that the allegedly darkened parking lot, where the assault was committed, is overlooked by a large number of apartment windows.

In *Loeser (supra,* at 191), this Court stated:

"Of course criminal acts frequently occur in daylight or in lighted premises. When, however, a criminal undertakes to commit a violent crime at night, it is at least a reasonable inference that he has been influenced in his choice of the time by the cover afforded by darkness and that the presence or absence of lighting would be a significant consideration in his determining where and under what circumstances to commit the intended crime.

"That general observation has particular validity [where] * * * [n]umerous apartments overlook[ ] the parking lot. It is surely a reasonable judgment that would-be assailants, strangers to the building complex, would have hesitated to enter a brightly illuminated parking lot where they might be observed by tenants looking out of their windows".

We, therefore, held in *Loeser* that a jury question was raised as to whether the absence of the lights in that particular lot contributed substantially to the criminal assault and subsequent injuries. Indeed, in *Leyva v Riverbay Corp.* (206 AD2d 150), we distinguished *Loeser* not on the ground that there is no causal connection between lack of illumination and the plaintiff's injuries, but because in *Leyva* there was no showing of what type of security measures might have prevented the assault in question *(supra,* at 154). *Leyva* is distinguishable from this case in that in *Leyva* there was no claim that defective lighting was a proximate cause of plaintiff's injuries, nor was there evidence of a sufficient history of prior criminal activity in the location in issue.

We reaffirm the aforestated reasoning of *Loeser* and find that the question of whether or not the assault would have occurred if the lot had functioning lighting is one properly left to the jury. Plaintiff has raised a factual issue as to whether

the Housing Authority had constructive notice of the defective lighting by the affidavit of plaintiff's mother in which she stated that the light in issue had not functioned for at least three months prior to the alleged attack.

We do not believe that the issue of whether there was a history of assaults in the Parking Lot should be reached by this Court as the Housing Authority has failed to make that argument before the IAS Court and has failed to refute plaintiff's testimony that drug dealing in the area was rampant, and that he witnessed and was aware of many other assaults in the area.

Lastly, the Housing Authority argues that plaintiff, by venturing through the unlit Parking Lot on his return from the store after observing it in a darkened condition earlier, assumed the risk of his own actions, rendering the Housing Authority not liable for his injuries.

There are two distinct doctrines of "assumption of risk", the first of which does not bar recovery, but, rather, which diminishes plaintiff's recovery in the proportion to which he contributed to his own injuries (CPLR 1411; *Turcotte v Fell,* 68 NY2d 432, 438; *Davidoff v Metropolitan Baseball Club,* 61 NY2d 996, 997).

The second doctrine, known as "primary" assumption of risk, which is normally applied in cases involving an elevated risk of danger, such as sporting and entertainment events, involves risks which are "incidental to a relationship of free association between the defendant and the plaintiff in the sense that either party is perfectly free to engage in the activity or not as he wishes" *(Turcotte v Fell, supra,* at 438-439; *Owen v R.J.S. Safety Equip.,* 79 NY2d 967; *Cohen v Heritage Motor Tours,* 205 AD2d 105, 108; *Lamey v Foley,* 188 AD2d 157, 163).

In the matter at bar, plaintiff's return trip across a parking lot, albeit a darkened one, cannot possibly involve an inherent, elevated risk of danger. To find that plaintiff's actions constituted a complete bar to recovery would not only nullify the comparative negligence law, and extend the doctrine of "primary" assumption of risk well beyond its intended scope, but would also serve to classify a stroll down a large number of this City's streets and other public areas as an inherently risky venture.

Accordingly, the order of Supreme Court, New York County (Diane A. Lebedeff, J.), entered on February 2, 1994, denying

defendant's motion for summary judgment dismissing the complaint, is affirmed, without costs.

MURPHY, P. J. (dissenting). I would reverse and grant defendant New York City Housing Authority's (NYCHA) motion for summary judgment dismissing the complaint.

Defendant-appellant NYCHA owns and operates a two-building housing complex called Gompers Houses on Pitt Street in lower Manhattan. Plaintiff-respondent Daniel Rodriguez, who formerly resided with his mother in the Gompers Houses, seeks damages from NYCHA for personal injuries he alleges as a result of being assaulted, robbed and viciously beaten by at least three unknown persons in the Parking Lot of Gompers Houses. This attack is alleged to have occurred shortly before midnight as respondent was taking a shortcut through the Parking Lot on his way back from a trip to the store. Appellant's negligence is alleged to be the failure to repair a sodium vapor light that was provided to illuminate the Parking Lot. The record establishes that the NYCHA installed an automatic switch that would turn the lighting on from dusk to dawn. For purposes of this motion we accept plaintiff's contention that the lot was provided with only one sodium vapor light, although the assistant superintendent of the complex testified that there were three lights. It should also be noted that the Parking Lot was not entirely dark because of nearby street lights. There is no evidence of a history of assaults in the Parking Lot. I would, therefore, hold that appellant's failure to repair the light was not a proximate cause of plaintiff's injuries. *(See, Allen v New York City Hous. Auth.,* 203 AD2d 313; *see also, Leyva v Riverbay Corp.,* 206 AD2d 150.)

Plaintiff testified at his deposition that as he was walking through the Parking Lot a large cloth was thrown over his head and he was pulled backward. His legs were struck by a pipe or similar object, and he was robbed of $3 and his outer jacket. Plaintiff testified that he did not at any time see his attackers, or where they came from.

There is no proof in the record that the lack of illumination was in any way a substantial causative factor in plaintiff's assault. There is no indication that darkness provided his assailants with a hiding place they otherwise would not have had. Indeed, they may have walked up from behind or been hiding between cars where no amount of light would have forewarned plaintiff of their presence. Plaintiff contends that

more illumination would have a deterrent value, but in my view this is too speculative a proposition on which to posit liability. As the Second Department held in *Allen v New York City Hous. Auth. (supra),* the causal connection between a failure to provide illumination and a criminal assault in an open-air public area is too attenuated to form the basis for recovery.

The majority relies on *Loeser v Nathan Hale Gardens* (73 AD2d 187), in which this Court stated in dicta that a jury could find negligence against a landlord for failure to repair exterior illumination in an open-air parking lot where a person is assaulted. The appeal in *Loeser* arose after a jury finding of negligence that we reversed on the ground of erroneous jury instructions. The jury verdict in *Loeser* was based in part on expert testimony that exterior illumination deters criminal activity.

In my view, a security expert's opinion as to the deterrent effect of exterior illumination against armed robbery is of little weight. Expert testimony may be competent to describe the effect of locks, fences, barriers, guards or the like, but when it comes to the effect of such an intangible as lighting on the working of the criminal mind, any opinion is mere conjecture. As one court stated:

"Further it is one thing for an expert to testify concerning the mechanical devices such as locks, safes, fences, etc. which are designed to protect property by 'hardening the target,' it is quite another for such expert to discuss deterring conduct such as rape, robbery or physical assaults.

"As one court has stated: ' "It is an easy matter to know whether a stairway is defective and what repairs will put it in order * * * but how can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic?" *(Goldberg* v. *Housing Auth. of Newark* (1962) 38 N. J. 578 [186 A.2d 291, at p. 297 * * *])' " *(Noble v Los Angeles Dodgers,* 168 Cal App 3d 912, 918, 214 Cal Rptr 395, 399).

As another California case stated: "Nor are we persuaded that the matter should go to the jury on the vague supposition that * * * even brighter lights might have deterred the assault. This theory has nothing to do with the creation of an opportunity to commit crime by providing a place of concealment. It is premised on the notion that the assailant's psychological propensity for crime is affected by the quantity of light.

It is a theory of mood lighting. If liability may be premised solely on this notion, proprietors will become the insurers of the safety of persons on their premises, subject only to the caprice of particular juries" *(Constance B. v State,* 178 Cal App 3d 200, 212, 223 Cal Rptr 645, 652; *see also, Nola M. v University of S. Cal.,* 16 Cal App 4th 421, 431-432, 20 Cal Rptr 2d 97).

I would hold that there is no causal connection between NYCHA's failing to repair the exterior illumination and plaintiff's injuries. A person walking alone carrying a bag at around midnight in lower Manhattan is, unfortunately, as likely to be attacked and robbed on the sidewalk as in a parking lot. The dubious notion—in any event completely unsupported in the present record—that additional illumination would have deterred a roving gang bent on robbery is too tenuous to form a basis for recovery.

ELLERIN and KUPFERMAN, JJ., concur with TOM, J.; MURPHY, P. J., and WILLIAMS, J., dissent in a separate opinion by MURPHY, P. J.

Order, Supreme Court, New York County, entered February 2, 1994, affirmed, without costs.